A07A1561, A07A1562. BARNUM v. COASTAL HEALTH
SERVICES, INC.; and vice versa.

(653 SE2d 816)

BERNES, Judge.

These are consolidated appeals arising out of a wrongful death and survival action brought by Burnice L. Barnum, as administratrix of the estate of her uncle Jimmy L. Barnum, against Coastal Health Services, Inc. In Case No. A07A1562, Coastal Health appeals from the trial court's denial of its motion for summary judgment based on the affirmative defense of accord and satisfaction. In denying the motion, the trial court concluded that a settlement agreement reached between the parties did not eliminate all of the plaintiff's claims. We agree with the trial court and, therefore, affirm. In Case No. A07A1561, the plaintiff challenges the trial court's subsequent ruling that in light of the partial settlement and the resulting amendments to the complaint, discovery would be reopened so that Coastal Health could depose any expert the plaintiff anticipated calling at trial, with the expert's fees to be paid by the plaintiff if Coastal Health had previously deposed the expert. We conclude that the trial court acted within its discretion in authorizing Coastal Health to depose the plaintiff's experts, but did not use the proper test for determining whether the plaintiff should pay the fees for any of her own experts' deposition time. Thus, in Case No. A07A1561, we affirm in part, vacate in part, and remand for further action consistent with this opinion.

The record reflects that the decedent, Jimmy Barnum, was an inpatient at Waycross Health and Rehabilitation Center from June 2, 1997 until his death on September 22, 2001. Coastal Health operated the rehabilitation center. Barnum, who was elderly, suffered from numerous medical conditions, including diabetes mellitus, peripheral vascular disease, dementia, incontinence, and stroke-related problems such as difficulty swallowing and reduced mobility. The plaintiff contends that Barnum's condition was stable until he suffered a stroke in December 2000. According to the plaintiff, the nursing staff at the rehabilitation center provided negligent medical care to Barnum after his stroke which, among other things, resulted in him becoming malnourished and dehydrated; caused him to develop pressure ulcers on his feet that in turn required him to undergo numerous painful procedures; and resulted in a decubitus ulcer on his lower back at the coccyx (or tailbone) deteriorating into a stage III and then stage IV ulcer that became septic and caused his death.[1]

---

[1] Pressure ulcers are categorized into four progressively serious stages. See Centers for Medicare & Medicaid Services, United States Department of Health & Human Services, "State

In January 2003, the plaintiff, Barnum's niece and the administratrix of his estate, filed this wrongful death and survival action against Coastal Health,[2] asserting claims for professional negligence, ordinary negligence, and violations of state statutory and federal administrative law. The plaintiff sought to recover monetary damages for the value of Barnum's life, his medical expenses, his pain and suffering, and his funeral expenses. After several years of litigation and after discovery had closed, Coastal Health and the plaintiff entered into a settlement agreement on June 29, 2006 which provided:

> This will confirm that we have agreed to settle all claims of Jimmy Barnum, his estate and/or the beneficiaries of his estate arising out of any and all care Mr. Barnum received at Waycross Health and Rehabilitation on or before July 1, 2001.

> We will provide you with a check for $75,000.00 and you have agreed not to further pursue any further litigation, collection or contribution actions currently pending or filed in the future dealing with any claims for damages for care provided to Mr. Barnum on or before July 1, 2001. You will provide us with a copy of your Amended Complaint, which will eliminate all claims on or before July 1, 2001, and make it clear that the claims you will now pursue will be limited to those after July 1, 2001.

> . . .

> This settlement involves only those claims that you may have had against the nursing home for damages on or before July 1, 2001, as it is your intent to continue to pursue additional claims that you have against the nursing home

---

Operations Manual, Appendix PP – Guidance to Surveyors for Long Term Care Facilities," § F314, at p. 168. A stage III ulcer is defined as a "[f]ull thickness skin loss involving damage to, or necrosis of, subcutaneous tissue that may extend down to, but not through, underlying fascia. The ulcer presents clinically as a deep crater with or without undermining of adjacent tissue." Id. In turn, a stage IV ulcer is defined as a "[f]ull thickness skin loss with extensive destruction, tissue necrosis, or damage to muscle, bone, or supporting structures (e.g., tendon, joint capsule). Undermining and sinus tracts also may be associated with [s]tage IV pressure ulcers." Id.

[2] The plaintiff also sued Satilla Health Services, Inc., but the claims against Satilla were dismissed with prejudice by consent of the parties.

that allegedly arose and allegedly caused damage to Mr. Barnum after July 1, 2001.[3]

Following execution of the settlement agreement, the plaintiff sought leave to amend the complaint to limit the claims to those arising after July 1, 2001.

After the plaintiff moved for leave to amend the complaint, Coastal Health filed a motion for summary judgment based on the affirmative defense of accord and satisfaction. Coastal Health contended that the settlement agreement was intended to and in fact did resolve all of the plaintiff's pending claims. The trial court declined to grant the motion. In turn, the trial court granted the plaintiff leave to amend the complaint, but ruled that discovery would be reopened for Coastal Health to have an opportunity to depose any expert that the plaintiff anticipated calling at trial. The trial court went on to rule that the fees for an expert's deposition time had to be paid by the plaintiff if Coastal Health had previously deposed the expert. The plaintiff moved for reconsideration of the trial court's order reopening discovery and reallocating the payment of expert costs. The trial court denied the motion for reconsideration but issued a certification of immediate review. We granted the application, and these consolidated appeals followed.

## Case No. A07A1562

1. In Case No. A07A1562, Coastal Health contends that the trial court erred in concluding that the settlement agreement did not resolve all of the plaintiff's pending claims. We disagree.

(a) Coastal Health argues that the settlement agreement should be construed as resolving all of the plaintiff's claims because any other construction would allow the plaintiff to improperly split her claim and obtain a double recovery. As an initial matter, the settlement agreement, read as a whole, plainly shows that it was not the parties' intention to release Coastal Health from all liability.

---

[3] Coastal Health apparently had two insurers over the time period that Jimmy Barnum was an inpatient, one that insured Coastal Health for the time period up to July 1, 2001, and another that insured it for the time period after July 1, 2001. During the litigation, Coastal Health was jointly represented by two attorneys, one retained by the first insurer and another retained by the second insurer. The settlement, however, was negotiated solely between plaintiff's counsel and Coastal Health's counsel retained by the first insurer. Although it is undisputed that the settlement was between the plaintiff and Coastal Health, the purpose of the settlement seemingly was to release the first insurer from any further liability under Coastal Health's insurance policy, which had a policy limit of $10,000,000.

> A mediation or settlement agreement is a contract subject to the usual rules of statutory construction. While the cardinal rule of construction is to determine the intention of the parties, no construction is required or permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.

(Citations omitted.) *Peacock v. Spivey*, 278 Ga. App. 338, 339 (1) (629 SE2d 48) (2006). Furthermore, "there is no full and complete release of claims where some claims are specifically reserved by any of the parties." (Citation and footnote omitted.) *Dowse v. Southern Guaranty Ins. Co.*, 263 Ga. App. 435, 438 (1) (588 SE2d 234) (2003).

Here, the settlement agreement clearly was intended to reserve some of the claims asserted by the plaintiff. In this respect, the agreement specifically provided that the plaintiff would file an amended complaint after execution of the agreement and explicitly stated that the plaintiff was entitled "to continue to pursue additional claims that [she had] against the nursing home that allegedly arose and allegedly caused damage to Mr. Barnum after July 1, 2001." Thus, the agreement did not contemplate that the plaintiff would be required to dismiss all of the pending claims as part of the settlement. Rather, the plain language reflects that the plaintiff was required to dismiss all pending claims flowing from nursing care provided on or before July 1, 2001, but could continue to pursue any claims flowing from nursing care provided after July 1, 2001.

It is true, as Coastal Health asserts, that Georgia law prohibits the splitting of claims such that in suing a particular defendant, "a plaintiff must bring every claim for relief he has concerning the same subject matter in one lawsuit." *Lawson v. Watkins*, 261 Ga. 147, 149-150 (2) (401 SE2d 719) (1991). Notably, however, the prohibition against claim splitting is for the benefit of the defendant and thus can be waived by him or her. *Story v. Rivers*, 220 Ga. 232, 233 (138 SE2d 304) (1964). As such, we have held that the prohibition against claim splitting does not apply to a partial settlement, since in that context the defendant has waived any objection to the splitting of the claims. *James v. Emmco Ins. Co.*, 71 Ga. App. 196, 201 (2) (30 SE2d 361) (1944) ("[T]here is no requirement of law that [requires] the parties to make a full settlement and prevents them from making a partial settlement if they can not agree upon a full one. The rule which requires a plaintiff to bring his action for the entire claim does not apply to a settlement.") (citations omitted). See also 1 AmJur2d, Actions, § 106. Hence, by entering into the settlement agreement with the plaintiff, Coastal Health waived any objection to claim splitting by the plaintiff.

Finally, we note that the troubling question of whether the settlement agreement negotiated by the attorney retained by the first insurer was in Coastal Health's best interests does not affect the outcome here. The general rule is that parties are free to contract about any subject matter and on any terms upon which they agree. *Brandon v. Newman*, 243 Ga. App. 183, 186 (3) (b) (532 SE2d 743) (2000). See also *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 675 (2) (308 SE2d 544) (1983).

(b) Coastal Health also argues that even if the settlement agreement left open the possibility that some claims would remain pending, the record evidence shows that the plaintiff has no claims flowing solely from negligent nursing care provided after July 1, 2001. Specifically, Coastal Health contends that even if the plaintiff may pursue claims that are unrelated to any alleged negligence predating July 1, 2001, the plaintiff has no such claim because Jimmy Barnum's alleged injuries and his ultimate death cannot be separated from the allegedly negligent care he received before July 1, 2001. As such, Coastal Health asserts that the trial court erred in denying summary judgment because there is no genuine issue of material fact over whether the plaintiff had any claims predicated only upon post-July 1, 2000 nursing care.

> When ruling on a motion for summary judgment, the party opposing the motion should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion.

(Citation omitted.) *Crisp Regional Nursing & Rehabilitation Center v. Johnson*, 258 Ga. App. 540, 541 (1) (574 SE2d 650) (2002). Viewed in this light, the record reflects that one of the plaintiff's medical experts, Nannette Hoffman, M.D., testified that because of his numerous medical problems, Jimmy Barnum was at high risk for stage I or stage II pressure ulcers. Consequently, Dr. Hoffman opined that she was not critical of the initial development of the pressure ulcer that appeared at Barnum's coccyx on June 16, 2001. However, Dr. Hoffman testified that the deterioration of the pressure ulcer into a stage III and then stage IV ulcer was the result of a negligent failure by the nursing staff to properly turn, reposition, and give adequate pressure relief to Barnum or to provide him with additional nutrition to assist him in healing. According to Dr. Hoffman, as of July 6, 2001, the stage I or stage II pressure ulcer had decreased in size, was in the process of healing, and with appropriate care and management, would have healed completely. Instead, by August 21, 2001, the ulcer had deteriorated, become infected, and "reached the point of no

return." Dr. Hoffman opined that it was this ultimate deterioration into a stage III and then stage IV ulcer that caused Barnum to become septic and die, and that, such an ulcer, in and of itself, would have killed him, irrespective of his other health problems.

In light of Dr. Hoffman's testimony, we conclude that there is a genuine issue of material fact as to whether the plaintiff has a wrongful death claim predicated solely upon negligent conduct occurring after July 1, 2001. Likewise, there is a genuine issue of material fact as to whether plaintiff has survival claims for medical expenses, pain and suffering, and funeral expenses based upon this same allegedly negligent conduct. Accordingly, the trial court did not err in concluding that a factual issue existed precluding the grant of summary judgment to Coastal Health.

### Case No. A07A1561

2. In Case No. A07A1561, the plaintiff contends that the trial court erred in holding that discovery would be reopened so that Coastal Health could depose any expert the plaintiff intended to call at trial, and in holding that if Coastal Health had already deposed an expert, that plaintiff would have to pay the expert's fees for the new deposition. We will address each holding in turn.

(a) According to the plaintiff, the trial court erred in reopening discovery so that Coastal Health could depose the plaintiff's experts, since the settlement agreement purportedly did not provide for additional discovery after the plaintiff amended her complaint to conform her claims to the agreement. A trial court, however, has broad discretion in controlling the time and scope of discovery. See *Rice v. Cannon*, 283 Ga. App. 438 (1) (641 SE2d 562) (2007); *Bicknell v. CBT Factors Corp.*, 171 Ga. App. 897, 898-899 (321 SE2d 383) (1984). As a result of the execution of the partial settlement agreement, a new causation issue arose, namely, whether the plaintiff has any claims flowing solely from negligent nursing care provided after July 1, 2001. This is because, as discussed above, any claims of the plaintiff involving negligent care on or before July 1, 2001 are barred by the settlement agreement. Given this new causation issue, the trial court was entitled to reopen discovery so that Coastal Health would have an opportunity to depose the plaintiff's expert witnesses on this issue prior to trial. See generally id.

The settlement agreement itself was silent as to whether additional discovery could occur following the plaintiff's amendment of her complaint. As such, the agreement did not take a position one way or the other as to whether additional discovery would be permitted.

Without more explicit contractual language, we are unwilling to curtail the trial court's wide discretion over how and when discovery would be conducted.

(b) The plaintiff further argues that the trial court erred in ruling that she must pay the fees of any of her experts who are redeposed by Coastal Health. OCGA § 9-11-26 (b) (4) of the Georgia Civil Practice Act specifically addresses who is responsible for paying the fees of expert deponents. It provides in part:

> A party may obtain discovery . . . from any expert described in this paragraph, the same as any other witness, *but the party obtaining discovery of an expert hereunder must pay a reasonable fee for the time spent in responding to discovery by that expert*, subject to the right of the expert or any party to obtain a determination by the court as to the reasonableness of the fee so incurred.

OCGA § 9-11-26 (b) (4) (A) (ii). Thus, the baseline rule is that the party deposing the expert must pay the expert a reasonable fee. See generally *Polston v. Levine*, 171 Ga. App. 893, 893-894 (1) (321 SE2d 350) (1984). OCGA § 9-11-26 (b) (4) (C) (ii), on the other hand, creates a "manifest injustice" exception:

> Unless manifest injustice would result: . . . With respect to discovery obtained under [OCGA § 9-11-26 (b) (4) (A) (ii)], the court may require . . . the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

OCGA § 9-11-26 (b) (4) (C) (ii).

In determining the meaning of the "manifest injustice" exception found in OCGA § 9-11-26 (b) (4) (C) (ii) when read in pari materia with OCGA § 9-11-26 (b) (4) (A) (ii), we look to federal law for persuasive authority. We have emphasized that

> the Georgia Civil Practice Act was taken from the Federal Rules of Civil Procedure and with slight immaterial variations its sections are substantially identical to corresponding rules. Because of this similarity it is proper that we give consideration and great weight to constructions placed on the Federal Rules by the federal courts.

(Citation and punctuation omitted.) *Bicknell*, 171 Ga. App. at 898-899. In interpreting Federal Rule of Civil Procedure 26, federal courts

have held that a party deposing an expert must pay the expert a reasonable fee unless doing so would create manifest injustice. See, e.g., *Dukes v. Georgia*, 428 FSupp.2d 1298, 1337 (N.D. Ga. 2006); *Fisher-Price, Inc. v. Safety 1st*, 217 FRD 329, 332 (D. Del. 2003). And, in determining whether manifest injustice exists, federal courts often consider and weigh several factors. These factors include the possible hardships imposed on the respective parties; the need for doing justice on the merits between the parties; whether a party is indigent; and the need for maintaining orderly and efficient procedural arrangements. See, e.g., *Harris v. San Jose Mercury News*, 235 FRD 471, 473 (N.D. Cal. 2006); *Fisher-Price*, 217 FRD at 332; *Edin v. Paul Revere Life Ins. Co.*, 188 FRD 543, 547 (D. Ariz. 1999).

Based on this persuasive authority, we conclude that OCGA § 9-11-26 (b) (4) (A) (ii) and (b) (4) (C) (ii), when read together, require that Coastal Health pay the reasonable fees of any expert it deposes or redeposes, unless doing so would create manifest injustice. In other words, the trial court was not entitled to shift the payment of the experts' fees to the plaintiff unless Coastal Health demonstrated that shifting the fees was necessary to avoid a manifest injustice. In order to determine whether Coastal Health had met its burden on this issue, the trial court needed to consider and weigh the various factors discussed above. See *Harris*, 235 FRD at 473; *Fisher-Price*, 217 FRD at 332; *Edin*, 188 FRD at 547.

We have not previously articulated what factors should be considered in determining whether the manifest injustice exception applies under OCGA § 9-11-26 (b) (4) (C) (ii), and neither party framed its arguments in terms of OCGA § 9-11-26 (b) (4) in the court below. Under these circumstances, it is clear that the trial court did not consider and weigh the factors we have articulated or otherwise make a determination as to whether Coastal Health had proven that manifest injustice existed. Accordingly, we vacate the trial court's order to the extent that it requires the plaintiff to pay the fees of experts redeposed by Coastal Health and remand for further proceedings consistent with this opinion.

*Judgment affirmed in part, vacated in part and case remanded in Case No. A07A1561. Judgment affirmed in Case No. A07A1562. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 2, 2007 — 

*J. Converse Bright*, for appellant.

*Chambless, Higdon, Richardson, Katz & Griggs, Joseph H. Chambless, David N. Nelson*, for appellee.