**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 18, 2013

# In the Court of Appeals of Georgia

A13A0003. HULL et al. v. WTI, INC.

BARNES, Presiding Judge.

This appeal involves a discovery dispute about electronic records. The trial court granted the plaintiff's motion to compel the six defendants to identify which documents they produced responded to each of the plaintiff's requests to produce. The court also sanctioned the defendants for identifying more than 80 percent of the documents as "Highly Confidential–Outside Attorneys' Eyes Only" and awarded the plaintiff $7,500 in attorney fees. We granted the defendants' application for interlocutory appeal, and for the reasons that follow, we affirm the trial court's order.

Trial courts have broad discretion to control discovery, which is appropriate because trial judges, through their direct involvement with the case, the parties, and the attorneys, and their familiarity with the actions of the parties in the conduct of discovery in similar cases that are properly

brought to their attention, are in the best position to evaluate the parties' conduct and to determine the appropriate level of sanctions.

(Citations omitted.) *Howard v. Alegria*, ___ Ga. App. ___ (4) (a) (739 SE2d 95) (2013).

The facts in the underlying business litigation are complicated. WTI, Inc., which develops and sells "marinades, custom blends, water soluble ingredient mixtures and nutraceuticals for the food processing industry," filed a 13-count complaint against six defendants[1] for breach of contract, trade secret misappropriations and other business tort claims. Some of the defendants, including "food technologist" and former employee Richard S. Hull, filed counterclaims against WTI for breach of contract, trade secret misappropriation, and trademark infringement, among other things.

Massive discovery ensued between the parties and third parties, resulting in massive disputes. The trial court entered a twelve-page stipulated protective order regarding confidential and proprietary issues. Pursuant to the order, the parties could designate documents containing certain information as either "Confidential" or

---

[1] The defendants are Richard S. Hull, GPI USA, LLC, Romeo Toledo, Robert Brooks, Isoage Technologies, LLC, and Triad Resource Technologies, LLC.

"Highly Confidential – Outside Attorneys' Eyes Only." The order defined "confidential" and "highly confidential," specified the entities with whom the information could be shared, and provided that the lawyers could not review highly confidential information with their clients. Finally, the order provided that any party could request a producing party to re-designate confidential or highly confidential documents, and that if the parties could not agree, the trial court would resolve the categorization dispute.

The defendants subsequently moved the court to compel WTI "to fully and completely respond" to its discovery requests, arguing that WTI had failed to identify with sufficient particularity the trade secrets and confidential information it claims the defendants misappropriated. They also objected to responses that relied on OCGA § 9-11-33 (c), which provides that when the answer to an interrogatory may be derived from business records produced and the burden of deriving the answer is substantially the same for both parties, it is sufficient for the respondent to refer to the records and give the other party an opportunity to examine them and make copies or summaries. After a hearing, the trial court denied the motion. The court reviewed specific discovery requests and responses and found that WTI had sufficiently

produced and identified documents containing the information sought, and properly relied in some responses on OCGA § 9-11-33 (c).

A month later, WTI moved the trial court to compel the defendants to identify which documents produced were responsive to which of its requests for production and to withdraw the highly confidential label from all documents that did not qualify for that designation. It also argued that the defendants had so abused the highly confidential label that they should no longer be able to use it at all and should be sanctioned by being required to pay attorney fees for WTI's trouble and expense.

At a hearing on the motion to compel and for sanctions, WTI asserted that it could not identify from the defendants' discovery responses the documents on which the defendants would rely to support their answers and counterclaims. It argued that it served about 100 unique requests for production, which were asked of more than one defendant because it did not know which defendants held which documents, but received 156,000 pages of documents from which to glean the information. Additionally, WTI argued that if the documents had been produced as kept in the usual course of business, they were inadequately organized, and that the defendants should be required to provide responsive documents "organized and labeled to correspond to the categories in the requests." For example, WTI argued, it had no way

4

to identify the documents on which Hull relied for his counterclaim asserting he was entitled to stock options.

Finally, WTI argued that the defendants initially labeled 95 percent of the documents produced as "highly confidential," which meant counsel could not confer with the clients about whether the documents were useful or not. When WTI objected and gave the defendants examples of documents that did not meet the protective order's definition of highly confidential, the defendants redesignated those particular documents, leaving 83 percent of them labeled highly confidential as of the hearing.

The defendants responded that they were under no legal obligation to identify which documents correlated to which request to produce. Absent any specific directive in the Georgia Civil Practice Act ("CPA") regarding electronic records, they relied on Federal Rule of Civil Procedure 34 (b) (2) (E), which provides that a party may produce documents either as kept in the ordinary course of business or organized and labeled to correspond to categories.[2] In response to WTI's discovery requests, the

_____

[2]F.R.C.P. (b) (2) (E) provides,
Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request.

defendants scanned all of the paper documents in the form and order in which they were kept in filing cabinets, extracted electronic documents from hard drives and email messages from accounts which were then processed into images, and Bates-stamped the documents in the order they were found. Additionally, the defendants argued, they created "load files," electronic indexes that allow a user to search the data by certain fields such as file name, date sent or created, and email sender and recipient. When asked by the trial court at the hearing how WTI's counsel would find documents related to Hull's stock option counterclaim, however, the defendants' counsel instead explained how to search the fields. For example, counsel searched the "filename" field for a mutual customer's name, and the load file identified 9,000 documents. WTI noted in reply that the documents themselves were not keyword-searchable; only the data fields were, and thus the index was of limited use for its purposes.

---

(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

6

As to the confidential designations, the defendants' counsel twice confirmed to the trial court that each document had been reviewed by an attorney to determine whether the designation given was appropriate. The defendants took the position that the burden fell on WTI to identify the documents that it did not consider confidential, noting that the defendants had redesignated every document WTI had so far brought to their attention.

In its order granting WTI's motions to compel and for sanctions, the trial court found that "the production of over 156,000 pages of documents with insufficient organization, coupled with the failure of Defendants to identify which documents are responsive to which of [WTI's] requests for production of documents, is inconsistent with Defendants' obligations under the Civil Practice Act." It ordered the defendants to designate by Bates-stamp number each document responsive to each request for production served on each defendant. It also held that the defendants had failed to comply with the court's protective order directing them to designate as highly confidential "only those" documents that met certain criteria. Based on the representations by defendants' counsel that lawyers in his office had reviewed the documents before they were produced to determine their confidentiality designation, the court found that the defendants "have not acted in good faith," ordered them to

relabel the documents properly, and awarded WTI $7,500 attorney fees, approximately half of the sum WTI sought.

1. The defendants first argue that the trial court abused its discretion by requiring them to designate each document that is responsive to each of WTI's requests for the production of documents, and that this court should review de novo this "clear error of law" or "clear error of judgment." They frame the first enumeration as

> whether, in the absence of Georgia law on point, the Georgia Civil Practice Act ["CPA"] prohibits a party from producing documents "as kept in the usual course of business," consistent with Federal Rules of Civil Procedure 34 (b) (2) (E), in lieu of the producing party designating by [B]ates-stamp number each document that is responsive to each request for production of documents.

They also argue in the alternative that the trial court abused its discretion by finding that their documents were insufficiently organized, a finding they also characterize as a plain legal error to be reviewed de novo.

But the trial court never held that the Georgia CPA *prohibits* a party from responding to discovery by producing documents as they are kept in the usual course of business. Rather, the trial court held that in this case, under these circumstances,

8

the production of over 156,000 pages of documents with insufficient organization coupled with the defendants' failure to identify which documents responded to which requests was "inconsistent with the Defendants' obligations under the Civil Practice Act."

The defendants argue eloquently that their method of production was proper under the Federal rules, that Georgia's rules are based generally on the Federal rules, and that this court may properly consider federal courts' construction of their rules, as we held in *Barnum v. Coastal Health Svcs.*, 288 Ga. App. 209, 215 (653 SE2d 816) (2007). In *Barnum*, we considered the federal courts' definition of "manifest injustice" to address whether a trial court properly held that a plaintiff had to pay the costs of the defendant's re-deposing the plaintiff's experts. Id. at 216 (2) (b).

The issue on appeal in this case, however, is quite different. The defendants ask us to hold that the trial court does not have the discretion to order them to identify its discovery responses with particularity because the Federal Rule allows a discovery respondent to produce documents as they organized in the usual course of business. While the trial court in its discretion could have found that the defendants' document production was sufficient, the court also acted within the bounds of its permitted discretion by determining that the manner of production was not sufficient.

The defendants also argue on appeal that the trial court abused its discretion by finding that their documents were insufficiently organized, having drawn its errant conclusions from only a small number of irrelevant or out-of-order documents. The defendants have not, however, described the documents' organization other than to say that the documents were presented as they had been stored on hard drives and in file drawers. They have not argued, for example, that if WTI wanted to know which documents Hull would rely on for his stock option counterclaim, WTI could look at documents contained in a file folder labeled "Stock Options" or "Benefits" or "Compensation." Further, as illustrated at the hearing, without relevant subject matter data fields, the defendants' index is of limited usefulness in determining which documents support which claims. Finally, as WTI points out, the defendants have to review individually more than 80 percent of the documents anyway to revise their confidentiality labels in accordance with the consent protective order, so identifying which documents support their claims adds a relatively minor burden.

The trial court did not hold that the Georgia CPA prohibits a party from responding to discovery by delivering its documents as kept in the usual course of business. Rather, the court held that these defendants, in this case, with this document

10

production, did not fulfill their obligations under the CPA. Reviewing the totality of the circumstances in this case, the trial court did not abuse its discretion by so ruling.

2. The defendants also argue that the trial court erred in awarding attorney fees to WTI.

In addition to conferring broad discretion on trial courts in matters of discovery, "determination of the reasonable expenses [of prosecuting a motion to compel] is likewise a matter of discretion." *Mansell 400 Assocs. v. Entex Info. Servs.*, 239 Ga. App. 477, 481 (5) (519 SE2d 46) (1999). OCGA § 9-11-37 (a) (4) (A) provides that if a trial court grants a motion to compel, it shall require the respondent to pay the movant's reasonable expenses in obtaining the relief "unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." OCGA § 9-11-37 (a) (4) (C) permits the trial court to apportion expenses "in a just manner" if it partially grants the motion to compel.

The defendants first argue that the attorney fee award should be reversed because they were substantially justified in defending their method of document organization based on the Federal rules, asserting that the trial court did not "tie the sanction" to the confidentiality designation issue. But regardless of whether the

11

defendants were justified in defending WTI's motion to compel based on their method of organization, the trial court also found that the defendants had "not acted in good faith" by failing to comply with the court's protective order directing them to "mark as Highly Confidential 'only those' documents that meet the criteria set forth in the Order." The trial court ordered the defendants to review and re-designate the documents appropriately, noting that further abuse of the confidential designation could result in a waiver of the defendants' right to use the designation. Further, although the court found that WTI was entitled to attorney fees under OCGA § 9-11-37, it only granted WTI $7,500 of its requested $14,751 in attorney fees.

While the defendants also assert that they are not appealing the trial court's findings and rulings regarding their designation of confidential documents, they then argue that they were justified in opposing WTI's motion to compel them to redesignate the documents. They cannot have it both ways. Either they dispute the trial court's finding that they acted in bad faith in their confidentiality designations or they do not.

The defendants marked more than 129,000 discovery documents as so sensitive that WTI's principals could not assist the company's attorneys in reviewing them. After confirming that the documents had been reviewed by lawyers before being

12

designated as highly confidential, the trial court concluded that the defendants did not act in good faith compliance with the protective order. Regardless of whether their document production was sufficient, this conclusion supports the trial court's award to WTI of half of the attorney fees it sought pursuant to OCGA § 9-11-37. Accordingly, we find no abuse of discretion in the trial court's order of sanctions.

*Judgment affirmed. Miller and Ray, JJ., concur.*