S04A2004. BELL v. AUSTIN et al.
(607 SE2d 569)

CARLEY, Justice.

Deborah Austin was injured when her car was struck from behind by a van operated by Curtis Bell. Seeking to recover damages, Mrs. Austin and her husband (Appellees) filed a tort action against Bell (Appellant). Pursuant to OCGA § 24-3-18 (a), they gave timely pre-trial notice that they intended to introduce into evidence a narrative medical report made by one of Mrs. Austin's physicians. Also acting pursuant to OCGA § 24-3-18 (a), Appellant filed a timely challenge to the admissibility of the report on various grounds, including an attack on the constitutionality of the statute itself. The trial court overruled the objections, and admitted the report at trial. The jury returned a verdict in favor of Appellees. Appellant filed a notice of appeal to the Court of Appeals, which properly transferred the case to this Court on the ground that it is within our jurisdiction over appeals raising constitutional issues.

1. A constitutional question will not be decided unless it is essential to the resolution of the case. *Bagwell v. Cash*, 207 Ga. 222, 223 (4) (60 SE2d 628) (1950). Therefore, our initial focus is on the non-constitutional objections to admission of the record.

(a) Appellant contends that OCGA § 24-3-18 permits the jury to hear medical testimony without sanction of the oath otherwise required by OCGA § 24-9-60.

"[U]nsworn statements are not treated as amounting to any evidence, except 'in specified cases from necessity.' [Cits.]" *Huiet v. Schwob Mfg. Co.*, 196 Ga. 855, 859 (2) (27 SE2d 743) (1943) (citing OCGA § 24-3-1, the hearsay statute). OCGA § 24-3-18 is such a "specified" exception to the hearsay rule. By its terms, the statute

does not address a witness' oral testimony, but relates instead to "any medical report in narrative form which has been signed and dated by [certain enumerated] examining or treating [medical professionals]. . . ." OCGA § 24-3-18 (a). The statute is intended to create a hearsay exception applicable in "the trial of any civil case involving injury or disease," so that a medical report in narrative form authored by one of the designated professionals

> shall be admissible and received in evidence insofar as it purports to represent the history, examination, diagnosis, treatment, prognosis, or interpretation of tests or examinations, including the basis therefor, by the person signing the report, the same as if that person were present at trial and testifying as a witness. . . .

OCGA § 24-3-18 (a). Thus, the very purpose of the statute is to dispense with the necessity of producing the author of the medical report as a sworn witness at trial, by authorizing the admission of the report itself. In doing so, it extends to civil cases involving injury or disease the same hearsay exception which has long been applicable in the workers' compensation context. See *Commercial Union Ins. Co. v. Crews*, 139 Ga. App. 521, 522 (2) (229 SE2d 14) (1976). Because no oral testimony is implicated, the oath specified in OCGA § 24-9-60 is not mandated.

(b) Appellant also contends that the statute denies him the right to conduct a cross-examination of the author of the report. To the contrary, however, OCGA § 24-3-18 (a) expressly provides that "any adverse party shall have the right to cross-examine the person signing the report and provide rebuttal testimony." Thus, the statute does not violate Appellant's right to confront and cross-examine witnesses. See *Foster v. Aladdin Mills*, 237 Ga. 704 (229 SE2d 451) (1976) (construing OCGA § 34-9-102 (e) (2), the comparable provision which authorizes admission of medical reports in workers' compensation cases).

(c) Appellant next urges that the report was inadmissible because, even though it contained medical opinions, it did not set forth the expert qualifications of the author. The reports within the scope of OCGA § 24-3-18 (a) are limited to those created

> by an examining or treating licensed medical doctor, dentist, orthodontist, podiatrist, physical or occupational therapist, doctor of chiropractic, psychologist, advanced practice nurse, social worker, professional counselor, or marriage and family therapist. . . .

At least 60 days prior to trial, Appellees were required to provide the report to Appellant and to advise him of their intent to introduce it. He was then authorized to "object to the admissibility of any portion of the report, other than on the ground that it is hearsay, within 15 days of being provided with the report." OCGA § 24-3-18 (a). Thus, Appellant had ample opportunity to determine whether the report was in fact created by one of the professionals enumerated in the statute and to contest its admissibility on the ground that the author lacked the expert qualifications to offer any of the opinions expressed therein. See *Bacon v. State*, 225 Ga. App. 326, 328-329 (483 SE2d 894) (1997). He did not raise such an objection below. Under these circumstances, the fact that the expert qualifications of the medical professional were not set forth in the report itself does not affect its admissibility.

2. Art. VI, Sec. I, Par. IX of the Georgia Constitution of 1983 provides that "[a]ll rules of evidence shall be as prescribed by law." A similar provision does not appear in earlier state constitutions. Thus, the effect of this paragraph is to elevate to constitutional status the long-recognized principle that "[t]he legislature has power to establish rules of evidence where not in conflict with the constitution or rights guaranteed by it." *Banks v. State*, 124 Ga. 15 (5) (52 SE 74) (1905). Accordingly, the General Assembly was authorized to create a hearsay exception for medical reports applicable in "the trial of any civil case involving injury or disease," so long as doing so does not violate any other constitutional provision.

(a) Appellant urges that OCGA § 24-3-18 violates equal protection by discriminating against those non-medical professionals whose reports are not excluded from the hearsay rule. By its terms, the statute authorizes the admission into evidence of only those reports created by certain medical professionals. However, Appellant lacks standing to challenge the statute based upon its limited applicability, since he is not among the class of non-medical professionals whose reports are not within the scope of its provisions. "A party will not be heard to complain of the violation of another person's constitutional rights." *Sims v. State*, 243 Ga. 83, 85 (2) (252 SE2d 501) (1979).

"The Georgia equal protection clause, which is construed to be consistent with its federal counterpart, requires that the State treat similarly situated individuals in a similar manner. [Cits.]" *City of Atlanta v. Watson*, 267 Ga. 185, 187 (1) (475 SE2d 896) (1996). Appellant is affected by OCGA § 24-3-18 only to the extent that he is a party to a civil action involving an injury that Mrs. Austin allegedly sustained as the result of his negligence. The statute does not discriminate against him in that capacity, since it gives him the same right as any other similarly situated party to rely upon the hearsay exception created thereby. Thus, if Appellant wished to introduce

medical reports authored by Mrs. Austin's examining or treating physicians to rebut her claim that the collision was the proximate cause of her medical condition, he could do so without having to call the doctors themselves as defense witnesses. In fact, the record indicates that he did exactly that.

> The person who is asserting the equal protection claim has the burden to establish that " 'he is similarly situated to members of the class who are treated differently from him.' " [Cit.] If the person asserting the violation cannot make the foregoing showing, "there is no need to continue with an equal protection analysis." [Cit.]

*Rodriguez v. State*, 275 Ga. 283, 284-285 (1) (565 SE2d 458) (2002). Because Appellant is treated no differently than any other party in a civil action involving injury or disease, he does not have a viable challenge to OCGA § 24-3-18 on equal protection grounds.

(b) Appellant also urges that the statute violates due process, because the phrase "medical report in narrative form" is unconstitutionally vague and indefinite. "To withstand an attack of vagueness or indefiniteness, a civil statute must provide fair notice to those to whom the statute is directed and its provisions must enable them to determine the legislative intent. [Cit.]" *Anderson v. Atlanta Committee for the Olympic Games*, 273 Ga. 113, 114 (1) (a) (537 SE2d 345) (2000). "Narrative" is readily understood to mean "[a] narrated account; story." American Heritage Dictionary (2nd College ed. 1991). Thus, OCGA § 24-3-18 (a) clearly applies to reports which set forth, in story form, the author's assessment of the patient's "history, examination, diagnosis, treatment, prognosis, or interpretation of tests or examinations, including the basis therefor. . . ." The narrative form is specified because the report "shall be presented to the jury as depositions are presented . . . and shall not go out with the jury as documentary evidence." OCGA § 24-3-18 (b). The obvious purpose of the provision is "to cut down on the time and cost involved in [civil] cases [involving injury or disease]." *Commercial Union Ins. Co. v. Crews*, supra at 524 (2). Thus, the law authorizes the admission of only those reports which, rather than consisting of unexplicated medical terms and uninterpreted scientific test results, set forth the relevant information in prose language that is more readily understandable to laymen. Other medical records which would require an expert analysis to demonstrate their import are still subject to a hearsay objection. See *John Crane, Inc. v. Jones*, 262 Ga. App. 531, 535 (2) (586 SE2d 26) (2003). OCGA § 24-3-18 is sufficiently clear and definite as to satisfy due process requirements, because it is not so

vague and indefinite in its meaning that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application. See *Anderson v. Atlanta Committee for the Olympic Games*, supra.

3. Appellant urges that Appellees used their peremptory strikes to discriminate against two African-American potential jurors. See *Edmonson v. Leesville Concrete Co.*, 500 U. S. 614 (111 SC 2077, 114 LE2d 660) (1991). The record indicates that the trial court did not make an express ruling on whether Appellant established a prima facie case of racial discrimination, but nevertheless required Appellees to explain the strikes. See *Berry v. State*, 267 Ga. 605, 609 (5) (481 SE2d 203) (1997). In one instance, the explanation was that the potential juror's husband currently works for Appellant's former employer. In the other instance, the potential juror failed to respond to a general inquiry directed at the panel as to employment in the health-care field, even though she was a certified nursing assistant. Each explanation was truthful, and both were racially neutral.

> The nature of a prospective juror's employment is "not a characteristic that is peculiar to any race." [Cits.] Likewise, a strike based upon a prospective juror's lack of responsiveness during voir dire . . . is a race-neutral peremptory strike. [Cits.]

*Trice v. State*, 266 Ga. 102, 103 (2) (464 SE2d 205) (1995).

> [W]here, as here, racially-neutral reasons are given, "the ultimate inquiry for the (trial court) is not whether counsel's reason(s are) suspect, or weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not race-based." [Cit.]

*Smith v. State*, 264 Ga. 449, 454 (4) (448 SE2d 179) (1994). " '[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal. . . .' [Cit.]" *Smith v. State*, supra at 451 (1).

> "(W)e are not authorized to create an inference of discrimination where none is apparent, and where none has been found by the trial court, to whose findings we must give great deference. (Cits.)" [Cit.] The trial court's finding that there was no racial motivation in [Appellees'] exercise of peremptory strikes against . . . two of the . . . black potential jurors . . . for whom . . . non-racial reasons were given is not clearly erroneous.

*Smith v. State*, supra at 452-453 (3).

4. Appellant contends that the verdict is not supported by the evidence. However, the jury was authorized to find that the collision was proximately caused by Appellant's negligence and, in addition, there was evidence to support a finding that the injuries for which Appellees sought damages were the proximate result of the collision. See *Georgia Cas. & Surety Co. v. Jernigan*, 166 Ga. App. 872, 877 (5) (305 SE2d 611) (1983). Accordingly, this case is controlled by the long-standing principle that this Court will not interfere with the verdict of a jury where there is sufficient evidence to authorize it. *Porter v. Kolb*, 46 Ga. 266 (1872).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 10, 2005.

*Kent, Worsham & Smart, Hugh M. Worsham, Jr.*, for appellant.
*Killian & Boyd, Robert P. Killian*, for appellees.
*Reynolds & McArthur, Charles M. Cork III*, amicus curiae.

