S07A0659. QUARTERMAN v. THE STATE.
(651 SE2d 32)

HUNSTEIN, Presiding Justice.

We granted Kenny Quarterman's application for interlocutory appeal from the trial court's ruling upholding the constitutionality of OCGA § 24-4-60, which requires any person convicted of a felony and incarcerated in a State correctional facility to provide a sample for

DNA analysis to determine the identification characteristics specific to the person. Id. at (b). For the reasons that follow, we affirm.

In 2005, while Quarterman was incarcerated in the State prison system for a felony drug conviction, a DNA sample was collected from him pursuant to OCGA § 24-4-60 (b). The profile resulting from the DNA analysis was filed in the DNA database[1] maintained by the Georgia Bureau of Investigation. The State matched Quarterman's DNA to DNA gathered from an underage female who had reported a sexual assault in June 2002.[2] After a fresh sample of Quarterman's DNA was obtained by search warrant and typed, the report reflected that the DNA gathered from the 2002 victim originated from either Quarterman or his identical twin. The State then indicted Quarterman on charges of rape and statutory rape, which gave rise to his motions to suppress evidence and quash the indictment based on constitutional challenges to OCGA § 24-4-60.

1. Quarterman contends OCGA § 24-4-60 denies him equal protection of the law because it requires DNA samples to be taken only from persons convicted of felonies who are incarcerated in State correctional facilities,[3] thereby treating such persons differently than persons convicted of misdemeanors who are incarcerated in State correctional facilities for misdemeanants and persons who, although convicted of felonies, either serve their entire sentence incarcerated in county correctional facilities or who receive probated or suspended sentences. Assuming, arguendo, that Quarterman is similarly situated to persons accorded the different treatment,[4] "[a]n

[1] Although OCGA § 24-4-60 provides that the "identification characteristics of the profile resulting from the DNA analysis shall be stored and maintained by the bureau in a DNA *data bank*," (emphasis supplied), it appears the information is actually stored in a DNA database. See Iraola, "DNA Dragnets-A Constitutional Catch?" 54 Drake L. Rev. 15, 20-21 (2005) ("[w]hen discussing DNA analysis in the law enforcement context, it is important to understand the distinction between databanks and databases. Databanks store DNA samples consisting of blood, saliva, tissue or fluid. Databases, on the other hand, consist of portions of those samples which have been analyzed. The analysis, which yields a genotype or 'profile' expressed as a set of numbers, is what is entered into state or local databases. . . . Databases that contain profiles from databank samples can be searched by computer to determine if there is a match with genotypes derived from samples recovered from the victim or the crime scene").

[2] The victim reported that she had been sexually assaulted by a man she knew as "Kenny," but the police had been unable to ascertain her alleged assailant's identity.

[3] We note that OCGA § 24-4-60 (b) also requires DNA samples to be obtained from all convicted felons incarcerated in private correctional facilities in this State pursuant to a contract with the Department of Corrections.

[4] As we stated in *Reed v. State*, 264 Ga. 466 (448 SE2d 189) (1994):
There are two prongs to an evaluation of legislation under an equal protection claim . . . and, as the legislation is presumptively valid, the claimant has the burden of proof as to both prongs. Initially, the claimant must establish that he is similarly situated to members of the class who are treated differently from him. Next, the claimant must establish that there is no rational basis for such different treatment. [Cits.]

equal protection challenge is assessed under the 'rational relationship' test when [as here] neither a suspect class nor a fundamental right is affected by the challenged statute. [Cit.]" *Love v. State*, 271 Ga. 398, 400 (2) (517 SE2d 53) (1999). Under that test, the legislative classification created by OCGA § 24-4-60 can withstand constitutional assault when the classification is rationally related to a legitimate State interest. See *Glenn v. State*, 282 Ga. 27 (1) (644 SE2d 826) (2007). We recognize, as has the United States Court of Appeals for the Eleventh Circuit, that because convicted felons are more likely to violate the law than ordinary citizens, our Legislature has a legitimate interest in creating for law enforcement purposes a permanent identification record of convicted felons. See *Padgett v. Donald*, 401 F3d 1273, 1279-1280 (II) (A) (11th Cir. 2005). In light of this recognized tendency by convicted felons to commit violent crimes, we reject Quarterman's argument that the Legislature acted without a rational reason when it chose to include for DNA profiling all convicted felons and not just those convicted of felonies involving sexual offenses. We further conclude that the Legislature's decision to subject convicted felons but not convicted misdemeanants to the DNA identification process was rationally related to this legitimate interest based on the difference between the types and seriousness of the offenses as well as the severity of punishment involved. Compare OCGA § 16-1-3 (5) (felony offense one punishable by imprisonment for "more than 12 months") with OCGA § 17-10-3 (a) (1) (maximum punishment for misdemeanor is "term not to exceed 12 months"). As to the distinctions drawn by OCGA § 24-4-60 between convicted felons who are incarcerated in correctional facilities overseen by the Department of Corrections and those who are not so situated, "the drawing of lines that create distinction is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary." (Citations and punctuation omitted.) *Browning v. State*, 254 Ga. 478, 480 (330 SE2d 879) (1985). We find the classification is rationally related to the Legislature's legitimate law enforcement purpose of creating a permanent identification record of convicted felons because it encompasses all convicted felons whose crimes and/or past histories were serious enough to warrant a sentence to confinement, as opposed to lesser punishment such as a suspended or probated sentence, and that the Legislature acted reasonably and not arbitrarily when it focused on those convicted felons who are housed in a correctional facility where DNA samples can be efficiently and economically obtained. See *Farley v. State*, 272 Ga. 432, 434 (531 SE2d 100) (2000) (Legislature may address problem " 'one step at a time' or even 'select one phase of one field and apply a remedy there, neglecting the others' "). We therefore conclude that OCGA § 24-4-60 rationally relates to the

legitimate State interest it is intended to promote and does not violate equal protection. See generally *Cross v. State*, 272 Ga. 282 (528 SE2d 241) (2000) (classifications in Code sections need not be drawn with mathematical nicety).

2. Assuming, without deciding, that Quarterman has a property interest in his DNA, he has failed to establish how OCGA § 24-4-60 violated either his procedural or substantive due process rights.[5] "When a statute is under constitutional attack, this Court must presume it to be constitutional until it is established that the statute 'manifestly infringes upon a constitutional provision or violates the rights of the people. . . .' [Cit.]" *Cooper v. State*, 277 Ga. 282, 285 (II) (587 SE2d 605) (2003). Quarterman has not overcome this presumption.

3. In *Padgett*, supra, 401 F3d at 1274, the Eleventh Circuit considered and rejected arguments that OCGA § 24-4-60 violates the Fourth Amendment, the search and seizure provisions of the Georgia Constitution or the convicted felons' rights to privacy under the United States or Georgia Constitutions. While *Padgett* is not binding authority in this State, see *Conner v. State*, 251 Ga. 113 (5) (303 SE2d 266) (1983), we are persuaded by its reasoning and hold, consistent with the Eleventh Circuit, that OCGA § 24-4-60 does not unconstitutionally violate the privacy rights and search and seizure rights of convicted felons incarcerated in State correctional facilities.

4. The privilege against self-incrimination in the United States Constitution does not protect an individual from government compulsion to provide blood or other biological samples. See, e.g., *Schmerber v. California*, 384 U. S. 757 (II) (86 SC 1826, 16 LE2d 908) (1966) (neither extraction of blood nor its chemical analysis is inadmissible on self-incrimination grounds). Although the right against self-incrimination in the Georgia Constitution "has been construed liberally to limit the State from forcing an individual to affirmatively produce any 'evidence, oral or real,' regardless of whether or not it is testimonial, [cit.]" *Muhammad v. State*, 282 Ga. 247, 250, n. 1 (647 SE2d 560) (2007), OCGA § 24-4-60 does not force a convicted felon to remove incriminating evidence but only to submit his or her body for the purpose of having the evidence removed. Thus, OCGA § 24-4-60 does not violate Quarterman's right under the Georgia Constitution to not incriminate himself. See *Creamer v. State*, 229 Ga. 511, 518 (3) (192 SE2d 350) (1972).

---

[5] In his brief, Quarterman states merely that he "maintains his position for the purpose of making a record that may be needed in future proceedings or that may be needed when the scientific technology and uses of DNA evidence evolves even further."

5. In *Vanderlinden v. Kansas*, 874 FSupp. 1210 (D.C. Kansas) (1995), the court addressed an Eighth Amendment claim by plaintiffs, convicted felons, against the Kansas DNA profiling statute, and that state's contention that its statute was not penal, but rather was intended to further a legitimate governmental interest.

> The eighth amendment prohibits any punishment which violates civilized standards of humanity and decency and "which is repugnant to the conscience of mankind." *Louisiana ex rel. Francis v. Resweber*, 329 U. S. 459, 471 [(67 SC 374, 91 LE 422)] (1947). See also *Estelle v. Gamble*, 429 U. S. 97, 102-03 [(97 SC 285, 50 LE2d 251)] (1976). The court's resolution of this argument depends upon its determination of whether the statute imposes punishment. Unless it is clear punishment was intended, this inquiry turns on whether an alternative purpose for the provision is reasonably identifiable and whether it appears to be excessive in light of that purpose. *Bell v. Wolfish*, 441 U. S. 520, 538 [(99 SC 1861, 60 LE2d 447)] (1979). Here, the purpose of establishing a DNA databank has been identified, and the methods for obtaining data provided by the statute are not excessive measures in response to the purpose. Plaintiffs have not shown any use of excessive force that might arguably state a claim of cruel and unusual punishment in obtaining [DNA samples] through involuntary means. The court finds the statute is not penal and that means used to enforce the statute have not been shown to be malicious or grossly disproportionate to the refusal to comply with the statutory mandate.

Id. at 1216. For the reasons set forth in *Vanderlinden*, supra, we find no merit in Quarterman's argument that OCGA § 24-4-60 violates the Eighth Amendment.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 24, 2007.

*Michelle Holbrook Homier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Assistant District Attorneys*, for appellee.
*Thurbert E. Baker, Attorney General, Joseph J. Drolet, Senior Assistant Attorney General*, amici curiae.