S07A1486. MASON et al. v. THE HOME DEPOT U.S.A., INC. et al.

(658 SE2d 603)

BENHAM, Justice.

Arvin Ritchey Mason and Claudia Mason (hereinafter, the Masons) sued The Home Depot U.S.A., Inc. and The Flecto Company, Inc. in 1997 for injuries Arvin Mason allegedly received in 1996 while using Varathane, a floor covering product manufactured by Flecto and sold by Home Depot, and for Claudia Mason's resulting loss of

---

consortium. Shortly before the case went to trial in February 2005, the Georgia General Assembly enacted the Tort Reform Act of 2005 (hereinafter TRA), including OCGA § 24-9-67.1,[1] which governs the qualification of expert witnesses and the admissibility of expert testimony. Based on the new statute, the defense filed a motion to exclude the testimony of two expert witnesses for the plaintiffs, Dr. Grace Ziem and Dr. Ronald Huggins. The trial court denied the motion, holding that application of the new statute after years of discovery under pre-existing rules governing expert witnesses would violate the Georgia Constitution's proscription against retroactive laws. After a mistrial, the defense renewed their motion to exclude the testimony of the two experts, in response to which the Masons mounted attacks on the constitutionality of OCGA § 24-9-67.1. The trial court rejected the Masons' contentions the statute denied equal protection, violated the constitutional guarantee of trial by jury, and violated the prohibition against retroactive law, but found a portion of subsection (b) (1) to deny due process because it contradicts part of subsection (a), and cured the problem by excising part of subsection

---

[1] The statute reads, in pertinent part, as follows:

(a) The provisions of this Code section shall apply in all civil actions. The opinion of a witness qualified as an expert under this Code section may be given on the facts as proved by other witnesses. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing or trial. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

(b) If scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if:

(1) The testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case.

. . .

(f) It is the intent of the legislature that, in all civil cases, the courts of the State of Georgia not be viewed as open to expert evidence that would not be admissible in other states. Therefore, in interpreting and applying this Code section, the courts of this state may draw from the opinions of the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); General Electric Co. v. Joiner, 522 U.S. 136 (1997); Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999); and other cases in federal courts applying the standards announced by the United States Supreme Court in these cases.

(b) (1) and found subsection (f) violative of the principle of separation of powers, but cured that defect by severing subsection (f) from the statute. The trial court entered a second order applying the statute to exclude the testimony of the two experts. This appeal is from those two orders.

1. The Masons contend the statute violates the guarantees of equal protection of the laws found in the constitutions of the United States and Georgia. Specifically, they contend that because the statute imposes more stringent requirements for the admission of expert testimony in their tort action than applicable statutes would in criminal cases and in civil condemnation cases, they are disadvantaged in comparison to the parties in those types of cases.

Standing to challenge a statute on constitutional grounds in Georgia depends on a showing the plaintiff was injured in some way by the operation of the statute or that the statute has an adverse impact on the plaintiff's rights. *Tennille v. State*, 279 Ga. 884, 885 (622 SE2d 346) (2005); *Agan v. State*, 272 Ga. 540 (1) (533 SE2d 60) (2000); *State of Ga. v. Jackson*, 269 Ga. 308 (1) (496 SE2d 912) (1998); *Ambles v. State*, 259 Ga. 406 (1) (383 SE2d 555) (1989). The Masons showed how application of the stricter standards of OCGA § 24-9-67.1 places them at a disadvantage compared to parties in criminal cases, in which the admissibility of expert testimony is governed by the less strict standard of OCGA § 24-9-67 ("In criminal cases, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses."), and in civil condemnation actions, which are exempted from the requirements of the statute by OCGA § 22-1-14 (b), thereby establishing their appellate standing to assert a claim of denial of equal protection of the law.[2]

One challenging a statute on equal protection grounds must initially establish that he is similarly situated to members of the class who are treated differently from him. *Quarterman v. State*, 282 Ga. 383, 384, fn. 4 (651 SE2d 32) (2007). The Masons, therefore, bear the burden of showing that they are situated similarly to persons whom they allege are treated differently with regard to the admissibility of expert opinion testimony than they. Our review of the record and of Georgia law persuades us the Masons cannot shoulder that burden.

---

[2] To the extent the Masons' argument on equal protection concerns how criminal defendants are disadvantaged by the TRA, they lack standing to make that argument because they are not criminal defendants. "A party will not be heard to complain of the violation of another person's constitutional rights." *Sims v. State*, 243 Ga. 83 (2) (252 SE2d 501) (1979). For the same reason, the similar arguments made in several briefs filed by amici curiae are of no aid to the Masons.

"[T]he equal protection clause [does not] exact uniformity of procedure. The legislature may classify litigation and adopt one type of procedure for one class and a different type for another." *Dohany v. Rogers*, 281 U. S. 362, 369 (50 SC 299, 74 LE 904) (1930). Georgia's jurisprudence is in line with that quoted above since, far from considering all litigants to be similarly situated, this Court has consistently rejected the argument that all criminal defendants are similarly situated to each other and that all civil litigants are similarly situated to each other for purposes of evidentiary issues. "When considering an equal protection challenge in criminal matters, individuals are 'similarly situated' only if they are charged with the same crime or crimes." *Woodard v. State*, 269 Ga. 317, 321 (3) (496 SE2d 896) (1998) (1995 amendment to Child Hearsay Statute unconstitutional because it created disparate categories of identically situated defendants charged with molestation, some of whom must defend against more evidence than others). See also *Sims v. State*, 260 Ga. 782 (1) (399 SE2d 924) (1991) (statute which applies equally to all persons accused of child molestation does not create disparate classifications among similarly situated persons). In *Bell v. Austin*, 278 Ga. 844 (2) (a) (607 SE2d 569) (2005), this Court rejected an equal protection challenge to OCGA § 24-3-18 (a), which creates a hearsay exception applicable in "the trial of any civil case involving injury or disease," observing that the plaintiff could not show he was treated differently than similarly situated persons because he was "treated no differently than any other party in a civil action involving injury or disease. . . ." Thus, just as defendants in criminal cases are situated similarly only to others charged with the same offense, civil litigants are considered similarly situated only to others litigating the same cause of action.

While we have not previously been called upon to decide specifically whether civil law litigants are similarly situated to criminal litigants, we note that procedure in civil cases is governed by the Civil Practice Act while procedure in criminal cases is governed by the provisions of Title 17 of the Official Code of Georgia, thus establishing a separation between the two spheres of litigation. We held in *Sims v. State*, supra, 260 Ga. at 783, that the defendant, charged with child molestation, had not shown "that child molesters are similarly situated to all other criminals *or to civil litigants*." (Emphasis supplied.) From the foregoing, we conclude that, for purposes of evidentiary standards, only those accused of the same offense are similarly situated in the criminal law arena, only those asserting or defending against the same cause of action are similarly situated in the civil law arena, and the parties to civil cases are not similarly situated to those engaged in criminal prosecutions.

Thus, the Masons cannot establish the necessary element of an equal protection claim that they are situated similarly to those being treated differently. That being so, we need not pursue the equal protection issue past that point. *Quarterman v. State*, supra.

> The person who is asserting the equal protection claim has the burden to establish that he is similarly situated to members of the class who are treated differently from him. If the person asserting the violation cannot make the foregoing showing, there is no need to continue with an equal protection analysis.

(Citations and punctuation omitted.) *Rodriguez v. State*, 275 Ga. 283 (1) (565 SE2d 458) (2002). The trial court did not err in rejecting the Masons' equal protection challenge.

2. The Masons contend that OCGA § 24-9-67.1 violates due process because subsections (a) and (b) (1) are contradictory and, therefore, the entire statute should be stricken. The trial court agreed the subsections were contradictory; however, instead of striking the statute in its entirety, the trial court severed the contradictory language from subsection (b) (1)[3] and then proceeded to apply the revised statute, ultimately ruling that the Masons' experts were precluded from testifying under subsection (b) (2). Appellees contend that the Masons lack standing to challenge the constitutionality of these two provisions because the trial court excluded their expert under subsection (b) (2). We disagree. The Masons have appellate standing because they were harmed by the trial court's decision not to strike OCGA § 24-9-67.1 in its entirety, thereby enabling the trial court to exclude the Masons' experts under subsection (b) (2).

As to the underlying merits of the Masons' constitutional challenges, the trial court was correct in finding that subsection (a) and subsection (b) (1) are contradictory. Specifically, subsection (b) (1) limits experts to relying on potentially admissible facts and data, whereas subsection (a) plainly states that facts and data relied upon need not be admissible. The two provisions cannot be harmonized and, read together, they render the statute unconstitutionally vague. The trial court, however, was not required to strike the statute in its entirety because we have held that invalid portions may be severed if, as here, they are not mutually dependent on the remaining portions and legislative intent is not compromised. *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays*, 266 Ga. 393, 404 (7) (467 SE2d

---

[3] The trial court severed the phrase "which or will be admitted into evidence at the hearing at trial" from OCGA § 24-9-67.1 (b) (1).

875) (1996) ("When a statute cannot be sustained as a whole, the courts will uphold it in part when it is reasonably certain that to do so will correspond with the main purpose which the legislature sought to accomplish."); *Nixon v. State*, 256 Ga. 261, 264 (3) (347 SE2d 592) (1986) ("Where one portion of a statute is unconstitutional, this court has the power to sever that portion of the statute and preserve the remainder if the remaining portion of the Act accomplishes the purpose the legislature intended."). Therefore, we conclude that the trial court did not err.

3. The Masons contend OCGA § 24-9-67.1 (f) is unconstitutional as a delegation of legislative authority and a denial of due process. Subsection (f) contains two sentences, the first of which is an expression of intent that, "in all civil cases, the courts of the State of Georgia not be viewed as open to expert evidence that would not be admissible in other states." The second sentence suggests that Georgia courts, "in interpreting and applying this Code section, . . . may draw from the opinions of the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 [(113 SC 2786, 125 LE2d 469)] (1993); General Electric Co. v. Joiner, 522 U.S. 136 [(118 SC 512, 139 LE2d 508)] (1997); Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137 [(119 SC 1167, 143 LE2d 238)] (1999); and other cases in federal courts applying the standards announced by the United States Supreme Court in these cases."

Addressing the second sentence, the trial court agreed with the Masons that the suggestion that Georgia courts may consider federal authority in construing OCGA § 24-9-67.1 was a usurpation of judicial authority in that it was "clearly an attempt by the legislature to perform a judicial function by construing a law. . . ." *Martin v. Baldwin*, 215 Ga. 293, 299 (110 SE2d 344) (1959). Concluding the use of the word "may" did not make the sentence less an attempt to infringe on the province of the courts, the trial court found that provision unconstitutional as a violation of the principle of separation of powers. "The doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced. Under that doctrine, statutory construction belongs to the courts, legislation to the legislature." (Citation and punctuation omitted.) *Allen v. Wright*, 282 Ga. 9 (1) (644 SE2d 814) (2007).

We disagree with the trial court's conclusion. The suggestion in the statute that Georgia "may" consider the decisions of other courts on the subject did not invade the province of the judiciary because it was not couched in mandatory terms and merely stated a principle of law regularly employed by Georgia courts. See, e.g., *State v. Mayze*, 280 Ga. 5, 8-9 (622 SE2d 836) (2005) (analysis by Alabama court, although not controlling, is persuasive authority for construction of analogous constitutional and statutory provisions); and *Barnum v.*

*Coastal Health Svcs.*, 288 Ga. App. 209 (2) (b) (653 SE2d 816) (2007) (because of similarity of Georgia Civil Practice Act to Federal Rules of Civil Procedure from which it was taken, it is proper to consider and give weight to constructions placed on the federal rules by federal courts). The permissive suggestion in OCGA § 24-9-67.1 (f) that the courts consider federal interpretations of the cases on which the federal rules and OCGA § 24-9-67.1 were based contains no words of command and, unlike the resolution condemned in *Martin v. Baldwin*, supra, does not seek to enforce on the courts a particular construction of the statute. Accordingly, we conclude the trial court was mistaken in declaring subsection (f) unconstitutional on that ground. That conclusion does not require reversal of the trial court's judgment. The goal of the Masons' attack on subsection (f) was to have the entire statute declared unconstitutional. Since the trial court, after finding subsection (f) unconstitutional, applied the severability clause enacted with the statute (Ga. Laws 2005, p. 1, § 14), the net effect on the parties was the same as the effect of our ruling: the statute remains in effect.

Having already ruled subsection (f) unconstitutional, the trial court declined to rule on the Masons' contention that the first sentence of the subsection was also unconstitutional. In the interest of judicial economy, we will address the arguments the Masons raise on appeal.[4]

The Masons' argument on this issue identifies two purported infirmities in the first sentence of subsection (f), that it delegates to the courts of Georgia, and ultimately to the courts and legislatures of other states, the legislative authority to prescribe rules of evidence, and that it denies due process of law to litigants because it has no clear guidelines on how Georgia courts are to exercise the delegated powers. At the heart of those arguments is the Masons' assertion that the first sentence of subsection (f) constitutes a command to the courts of Georgia to rewrite Georgia law anytime any other jurisdiction announces a more strict standard for the admission of expert testimony. That assertion is the fatal flaw in their argument because the statement of intent in the first sentence of subsection (f) is no more than an explication by the legislature of its goal in enacting the statute. It contains no words of command which would invade the province of the judiciary or would delegate to the judiciary the legislature's duty. "It is always the duty of a court, in construing a statute, to ascertain and give full effect to the legislative intent. . . ."

---

[4] Although this Court generally will not rule on a challenge to the constitutionality of a statute unless the issue has been raised and ruled on in the trial court (*Poppell v. Gault*, 278 Ga. 437 (2) (603 SE2d 271) (2004)), in the interest of judicial economy we exercise our discretion to decide this question. See *Campbell v. State*, 268 Ga. 44 (2) (485 SE2d 185) (1997).

*Moore v. Robinson,* 206 Ga. 27, 40 (6) (55 SE2d 711) (1949). In that case, the caption of the act contained an expression by the legislature of the act's purpose and this Court suggested that in construing a doubtful statute there was "no better source to which a court may go for the purpose of finding the legislature's meaning of an act passed by it." Id. The present case may contain that "better source" since the legislature has been explicit in the body of the statute itself in stating its intent that the admission of expert testimony in the courts of this State be governed by the strictest standards available. We note that the Georgia Court of Appeals, in construing OCGA § 24-9-67.1, has already recognized subsection (f) as a statement of legislative intent. *Cotten v. Phillips,* 280 Ga. App. 280, 285-286 (633 SE2d 655) (2006). We conclude, therefore, that the statement of intent in subsection (f) is not a delegation of legislative power.

4. Contending they have a vested right to application of the evidentiary rules in effect prior to the passage of OCGA § 24-9-67.1, the Masons contend the application of the statute to their case violates the constitutional prohibition against retroactive laws. See Ga. Const. 1983, Art. I, Sec. I, Par. X. In support of that contention, they point to *Fowler Properties v. Dowland,* 282 Ga. 76 (646 SE2d 197) (2007), where this Court held the offer-of-judgment provisions of the TRA could not be applied to actions instituted prior to enactment of the statute. In that case, we drew a distinction between substantive and procedural law: "substantive law creates rights, duties, and obligations while a procedural law prescribes the methods of enforcing those rights, duties, and obligations." Id. at 78. "[W]here a statute governs only procedure of the courts, including the rules of evidence, it is to be given retroactive effect absent an expressed contrary intention." *Polito v. Holland,* 258 Ga. 54 (2) (365 SE2d 273) (1988). The Masons' argument that their expenditures in finding experts and developing their testimony served to vest their right to use the experts contradicts the straightforward rule "that there are no vested rights in any course of procedure." *Foster v. Bowen,* 253 Ga. 33 (315 SE2d 656) (1984). The fact that the Masons are disadvantaged by the statutory change does not affect application of the rule stated in *Pritchard v. Savannah St. & R. R. R. Co.,* 87 Ga. 294, 299 (13 SE 493) (1891): "The presumption against a retrospective construction has no application to enactments which affect only the procedure and practice of the courts, even where the alteration which the statutes make has been disadvantageous to one of the parties." (Citation and punctuation omitted.) The Masons' reliance on *Jones v. Oemler,* 110 Ga. 202 (35 SE 375) (1900), for the proposition that one may obtain a vested right in an evidentiary rule is misplaced. The issue there was whether a statute which changed the evidentiary weight to be given to certain charts could be applied to impact the rights a party had

obtained under a lease. The holding that it could not was based on vested rights in a property interest, not a vested right in an evidentiary rule. No such property right is involved here. The application of the evidentiary rules established by the TRA did not violate the constitutional prohibition against retroactive laws.

5. Finally, the Masons assert that the trial court, in applying the statute, erred in its decision to exclude the testimony of the experts used by the Masons at the first trial. They identify two basic decisions of the trial court as error: applying the standards identified in *Daubert v. Merrell Dow Pharmaceuticals*, supra, and concluding that the Masons' expert witnesses, Dr. Ziem and Dr. Huggins, could not testify as experts on causation and labeling, respectively, because the methods they employed in reaching their opinions do not meet the standards of OCGA § 24-9-67.1 (b) (2).

As we noted above, it is proper to consider and give weight to constructions placed on the federal rules by federal courts when applying or construing a statute based on those rules. See, e.g., *Turpin v. Todd*, 268 Ga. 820 (2) (a) (493 SE2d 900) (1997) (because procedural default standards of OCGA § 9-14-48 (d) are modeled on the federal standards, we look to federal decisions for guidance on this issue). Since OCGA § 24-9-67.1 (b) was based on Fed. R. Evid. Rule 702, which in its present form is based on the holdings in *Daubert* ("Rule 702 has been amended in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579 (1993), and to the many cases applying *Daubert*, including *Kumho Tire Co. v. Carmichael*, 119 SC 1167 (1999)" Fed. R. Evid. Rule 702, Advisory Committee Notes, 2000 Amendments), the trial court's application of the standards of *Daubert* was proper. *Turpin v. Todd*, supra.

[W]hether "a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion." (Citation and punctuation omitted.) *Moran v. Kia Motors America, Inc.*, 276 Ga. App. 96, 97 (1) (622 SE2d 439) (2005). We perceive no abuse of discretion in the trial court's conclusion that neither witness's testimony was shown to be "the product of reliable principles and methods. . . ." OCGA § 24-9-67.1 (b) (2). The trial court's rationale for excluding the testimony of Dr. Ziem as an expert on the issue of causation was based on a lack of scientific support of her methods of determining causation. Essentially, the trial court faulted Dr. Ziem's methods as being based only on her own experience and opinions, without any support in published scientific journals or any reliable techniques for discerning the behaviors and effects of the chemicals contained in Varathane. The Masons argue that since Dr. Ziem used the accepted medical methodology of differential diagnosis, the trial court could not properly find her methods to lack scientific support.

However, "expert opinions employing differential diagnosis must be based on scientifically valid decisions as to which potential causes should be 'ruled in' and 'ruled out.' [Cit.]" *Ervin v. Johnson & Johnson, Inc.*, 492 F3d 901, 904 (7th Cir. 2007). Dr. Ziem's testimony did not establish that required basis for supporting the application of a differential diagnosis. The trial court's findings, based primarily on Dr. Ziem's own testimony, support the conclusion that Dr. Ziem's testimony regarding causation was not "the product of reliable principles and methods. . . ." OCGA § 24-9-67.1 (b) (2). *Moran v. Kia Motors America, Inc.*, supra.

The trial court based its exclusion of Dr. Huggins's testimony as an expert on labeling on the methods he used in reaching his opinion. In considering Dr. Huggins's methods, the trial court noted that Dr. Huggins based his opinions primarily on toxicity data concerning Varathane's constituent chemicals without regard to the quantity of each chemical in the product or such factors as evaporation rates, used standards having no specific relevance to consumer use of products, and based his opinion solely on data he obtained from the Internet and from the Masons' attorneys. Considering those findings, we conclude the trial court did not abuse its discretion in determining Dr. Huggins's testimony was not "the product of reliable principles and methods. . . ." OCGA § 24-9-67.1 (b) (2).

Having concluded that the trial court's decisions on the constitutional issues properly before this Court on appeal were correct or constituted harmless error, and that the trial court's exclusion of the opinion testimony of Dr. Ziem regarding causation and Dr. Huggins regarding labeling was not an abuse of discretion, we find no basis for reversing the trial court's judgment.

*Judgment affirmed in part and vacated in part. All the Justices concur, except Melton, J., who concurs specially and Hunstein, P. J., and Carley, J., who dissent.*

MELTON, Justice, concurring specially.

Although I concur with the remainder of the majority's opinion, I cannot concur with Division 2, as I believe that the provisions of OCGA § 24-9-67.1 (a) and (b) (1) may be harmonized without the need to strike any part of the statute.

In analyzing this case, we must not lose sight of the three basic principles of statutory construction.

First, courts should construe a statute to give sensible and intelligent effect to all of its provisions and should refrain, whenever possible, from construing the statute in a way that renders any part of it meaningless. Second, a court's duty is to reconcile, if possible, any potential conflicts between

different sections of the same statute, so as to make them consistent and harmonious. Third, in construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole.

(Citations and punctuation omitted.) *Sikes v. State*, 268 Ga. 19, 21 (2) (485 SE2d 206) (1997).

With these principles in mind, OCGA § 24-9-67.1 (a) sets forth the types of facts on which an expert may rely in forming an opinion. These facts include: (1) "facts as proved by other witnesses"; (2) facts "perceived by or made known to the expert at or before the hearing or trial"; and (3) inadmissible facts or data "of a type reasonably relied on by experts in the particular field." With regard to these latter facts, an expert's reliance on inadmissible facts will not automatically make an expert opinion inadmissible, and a trial court may ultimately determine to admit the inadmissible facts into evidence if their probative value in assisting the jury outweighs their prejudicial effect.

OCGA § 24-9-67.1 (b), in turn, focuses on the standards for determining whether the expert opinion, based on the types of facts set forth in subsection (a), will be admissible to "assist the trier of fact." OCGA § 24-9-67.1 (b) (1) provides that the opinion testimony is admissible if it is "based upon *sufficient* facts or data which are or will be admitted into evidence at the hearing or trial." (Emphasis supplied.) It does not mandate that an expert opinion must be based solely on admissible facts and data, which reflects subsection (a)'s indication that an expert may consider some inadmissible facts in reaching an opinion. Therefore, under (b) (1), an expert opinion which relies upon both admissible and inadmissible evidence or data will be allowed if the opinion testimony is based on a sufficient amount of admissible evidence that will enable the jury to properly assess the opinion testimony and apply it "to understand the evidence or to determine a fact in issue." Moreover, the language of (b) (1), itself, appears to reference both admissible and inadmissible facts. Admissible facts are those "which are admitted" at a hearing, and, in turn, those facts "which will be admitted" may include inadmissible facts deemed otherwise admissible by the trial court pursuant to subsection (a).

In summation, I believe subsections (a) and (b) work together to create a framework in which, to be admissible, the expert opinion must be based on a sufficient amount of admissible facts (including facts which are automatically admissible and inadmissible facts with the potential to be admitted at the trial court's discretion) to provide the jury with some means of analyzing the expert's conclusion. When

interpreted in this manner to harmonize subsection (a) and subsection (b) (1), I believe the statute sets forth a reasonable rule for expert testimony.

Rather than harmonizing the statute and construing the entirety of its language, as we are required to do, the majority concludes that subsections (a) and (b) (1) are contradictory because "subsection (b) (1) limits experts to relying on potentially admissible facts and data, whereas subsection (a) plainly states that facts and data relied upon need not be admissible." This observation, however, is actually proof that the statutory provisions work in harmony when the entirety of subsection (a) is properly considered. In language not considered by the majority, subsection (a) makes it clear that all inadmissible evidence properly relied on by an expert is, in fact, potentially admissible. It states:

> If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference *unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.*

(Emphasis supplied.) Taking this important language into consideration, subsections (a) and (b) (1) are clearly not contradictory, as each subsection contemplates that an expert opinion may be based on some combination of admissible and inadmissible facts and data. There is simply no contradiction in the plain language of the statute, taken as a cogent whole, and the majority errs by creating one based on a narrow reading of selected provisions.

HUNSTEIN, Presiding Justice, dissenting.

1. I cannot agree with the majority's holding in Division 1 that parties in criminal and civil cases are not similarly situated when it comes to the qualifications of expert witnesses. Because I would hold that they are similarly situated and, further, that there is no rational basis for the distinction drawn by the Legislature, I would find that OCGA § 24-9-67.1 violates appellants' equal protection rights.

OCGA § 24-9-67.1 sets forth the core qualifications required of expert opinion testimony in Georgia courts, namely, that it be the product of reliable principles and methods applied reliably to the facts of the case. Yet the Legislature imposes these qualifications only on potential expert witnesses in civil cases. The majority concludes

this is perfectly acceptable because civil and criminal litigants are not similarly situated. I cannot agree. Reliable expert opinion testimony is no less important in criminal cases than it is in civil cases. Neither civil nor criminal parties stand to gain any benefit from the admission of expert opinion testimony that is the product of unreliable principles and methods applied unreliably to the facts of their cases. Merely because we have recognized that civil and criminal litigants are not similarly situated in other circumstances does not preclude this Court from recognizing that in regard to OCGA § 24-9-67.1, civil and criminal parties are not just similarly but *equally* situated when it comes to the need for qualified, reliable expert opinion testimony at trial.[5]

I would recognize that, for purpose of analyzing appellants' equal protection challenge, civil and criminal litigants are similarly situated and that no rational basis exists for treating them differently. There is no rational reason to subject evidence affecting an individual's life and liberty to less rigorous standards of admissibility than that applied to evidence affecting mere property. The expert opinion evidence heard by a jury deciding a negligence claim against a podiatrist should not be more reliable than expert opinion evidence admitted to support imposition of a death sentence. While this Court has upheld different evidentiary standards between criminal and civil trials, e.g., *Sims v. State*, 260 Ga. 782 (399 SE2d 924) (1991) (under OCGA § 24-9-5, child who does not understand nature of oath is competent in criminal trial to testify about crimes witnessed by or perpetrated on the child, even though that same child would not be competent to testify about those same matters in any civil case other than deprivation proceedings), the Legislature had a rational reason for those distinctions. In the case of *Sims*, that reason was constitutionally compelling, namely, a criminal defendant's right to confront the witnesses against him, even when those witnesses are children too young to understand the nature of an oath. In *Bell v. Austin*, 278 Ga. 844 (2) (a) (607 SE2d 569) (2005) (upholding OCGA § 24-3-18, which sets forth a hearsay exception for the use of unsworn medical records in civil cases involving injury or disease), its readily discernible rational basis was the goal of minimizing the disruption to the work of medical professionals by dispensing with the need for their

---

[5] In asserting in its footnote 2 that appellants lack "standing" to raise this constitutional claim, the majority mischaracterizes appellants' equal protection challenge. Appellants do not assert that criminal defendants are "disadvantaged" by OCGA § 24-9-67.1. If anything, the statute "disadvantages" only civil litigants, in that it precludes them from using the same expert to give the same testimony that the statute allows either the State or the defendant to use in any criminal trial.

sworn testimony in the most typical cases where routine medical records[6] are sought to be admitted.

There is no rational reason for the Legislature to limit solely to civil cases the use of expert opinion testimony that is the product of reliable principles and methods applied reliably to the facts of a case. By creating different standards of admissibility based only on the nature of the litigation, OCGA § 24-9-67.1 creates the untenable situation where the same evidence proffered by the same expert witness for the same purpose may be allowed in criminal trials but excluded in civil trials. That expert's opinion testimony should be admitted or excluded for the same reasons in every case tried in our courts, without regard to whether the case is civil or criminal. There is, and can be, no legitimate, rational reason to distinguish between the nature of the litigation when it comes to the admissibility of the same testimony by the same expert witness. It is an affront to our concept of justice to deem reliable, qualified expert opinion testimony to be more important in civil cases than in criminal cases. I would therefore hold that OCGA § 24-9-67.1 violates the equal protection clauses of the United States and Georgia Constitutions.

2. I am also compelled to write in opposition to the majority's opinion upholding the constitutionality of OCGA § 24-9-67.1 (f) because it represents a blatant attempt by the Legislature to usurp judicial power. Subsection (f) provides that

> [i]t is the intent of the legislature that, in all civil cases, the courts of the State of Georgia not be viewed as open to expert evidence that would not be admissible in other states. Therefore, in interpreting and applying this Code section, the courts of this state may draw from the opinions of the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); General Electric Co. v. Joiner, 522 U.S. 136 (1997); Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999); and other cases in federal courts applying the standards announced by the United States Supreme Court in these cases.

The Constitution vests all legislative power in the General Assembly. Art. III, Sec. I, Par. I. It vests all judicial power in the courts. Art. VI, Sec. I, Par. I. It commands that these powers "remain forever separate and distinct." Art. I, Sec. II, Par. III. As we have long

---

[6] The statute expressly recognizes that objections may be made and the report's author called for cross-examination or rebuttal when there are disputes over any portion of the medical record. Id. at (a).

recognized, "[i]n the dividing line of power between these co-ordinate branches we find here the boundary — construction belongs to Courts, legislation to the Legislature. We cannot add a line to the law, nor can the Legislature enlarge or diminish a law by construction." *Calhoun v. McLendon*, 42 Ga. 405, 407-408 (1871). The judiciary under our government is alone empowered to interpret the laws. Id. at 407.

> While the line of demarcation separating the legislative, judicial, and executive powers may sometimes be difficult to establish, and for this reason each of the three co-ordinate branches of government frequently invades the province of the others, it is nevertheless essential to the very foundation of our system of government that the mandate of the constitution be strictly enforced. The judicial branch doubtless invades the legislative field more frequently than does the legislative branch the judicial field, but it is the duty of each to zealously protect its function from invasion of the others. The legislature has ample power to prevent attempted judicial legislation. Likewise the judiciary has the power to prevent judicial functions by the legislature, and the welfare of the State demands that it exercise this power when necessary.

*McCutcheon v. Smith*, 199 Ga. 685, 690-691 (2) (35 SE2d 144) (1945).

Subsection (f) of OCGA § 24-9-67.1 is not the first time the Legislature has acted to usurp judicial power and in the past this Court has repeatedly and flatly rebuked such efforts. In *Martin v. Baldwin*, 215 Ga. 293 (110 SE2d 344) (1959), the Legislature responded to the construction given a statute by the Court of Appeals by adopting a resolution that "made no change" in the statute itself, "but merely declared the legislative intent." Id. at 299. We responded by holding that the "mere" declaration of intent " 'is clearly an attempt by the legislature to perform a judicial function by construing a law, and offends [Art. I, Sec. II, Par. III] of the Constitution of this State, and is void.' [Cit.]" Id. In *Calhoun v. State Highway Dept.*, 223 Ga. 65 (153 SE2d 418) (1967), we held that

> [i]t is beyond the power of the General Assembly to specify what evidence can or can not be introduced to prove just and adequate compensation. If [the Legislature] have such power they could exclude all evidence and thus destroy the Constitution and private property also. If they can by the 1966 Act exclude evidence held judicially to be relevant and

admissible as was done in [an earlier opinion], they can render the judiciary impotent. [Cits.]

Id. at 68. We have recognized that our zealous protection of the courts is necessary because "[s]uch palpable usurpation of exclusive judicial functions by the legislature offends the Constitution, paralyzes the judicial function, . . . and constitutes a potential destruction of the judicial process." *Northside Manor, Inc. v. Vann*, 219 Ga. 298, 301 (133 SE2d 32) (1963). Accord *United Hospitals Service Assn. v. Fulton County*, 216 Ga. 30, 33 (114 SE2d 524) (1960); *McCutcheon*, supra, 199 Ga. at 691 (2); *Calhoun*, supra; *J.M.I.C. Life Ins. Co. v. Toole*, 280 Ga. App. 372 (1) (b) (634 SE2d 123) (2006).

Rather than zealously protecting judicial functions from legislative usurpation, the majority chooses instead to characterize the Legislature's codified directive in OCGA § 24-9-67.1 (f) as a "permissive suggestion" that "merely state[s] a principle of law regularly employed by Georgia courts." Maj. Op., p. 276. However, the majority cannot cite to a single other statute enacted in this State in which the Legislature has codified the specific judicial opinions it wants the courts to consider in construing the legislation it has enacted. Unlike OCGA §§ 10-1-256 and 10-1-391, which expressly reference the Federal *legislation* that was the source for those statutory provisions, the Legislature did not indicate that OCGA § 24-9-67.1 be construed with "due consideration" or "consistent with" the interpretations relating to the Federal Rules of Evidence, Rules 702 and 703, 28 U.S.C.A. Statutes that acknowledge the source for legislative language and express the Legislature's desire for consistency among the courts in the interpretation to be given that language present a far different situation from the Legislature's blatant attempt to usurp judicial functions in OCGA § 24-9-67.1 (f) by directing the courts to "draw from" *Daubert, Joiner* and *Kumho Tire Company*, supra.

The majority depicts subsection (f) as a "permissive suggestion" but since when have the courts of this State needed the Legislature to "suggest" that we have "permission" to consider Federal and foreign authorities in interpreting Georgia statutes? The courts are completely capable of identifying cases that we "may draw from" with or without the Legislature's permission. It is, after all, a primary function of courts to identify the legal precedent that is pertinent to the interpretation of a statute. Thus, even when characterized as a "suggestion," I would recognize that subsection (f) constitutes an impermissible encroachment on judicial authority.

OCGA § 24-9-67.1 (f) is not an instance in which the Legislature has exercised its ample power to correct a judicial construction it believes has led to an undesired application of a statute. E.g., Ga. L. 1998, p. 180, § 1 (amending OCGA § 17-10-6.1 and passing new

version of OCGA § 42-8-66 in response to *State v. Allmond*, 225 Ga. App. 509 (484 SE2d 306) (1997)). Nor is it an instance of subsequent legislation declaring the intent of the legislating body in enacting an earlier statute. See, e.g., *Jackson v. Delk*, 257 Ga. 541 (3) (361 SE2d 370) (1987). It is not even an expression of legislative intention regarding changes in statutes to be effective upon certain judicial rulings. E.g., Ga. L. 2000, p. 947 (stating the General Assembly's intention that "persons sentenced to death for crimes committed prior to May 1, 2000 be executed by lethal injection if" death by electrocution was declared unconstitutional). Rather, subsection (f) is an impermissible directive by the Legislature to the Judiciary regarding the future construction the Legislature wants the courts of this State to place on OCGA § 24-9-67.1. The Legislature is dictating, in no uncertain terms, that "reliable" expert opinion testimony is only that expert evidence held to be admissible in other states under the standards in *Daubert* and the other cited U. S. Supreme Court cases. In *McCutcheon*, supra, 199 Ga. at 691 (2), we recognized that there are times when the welfare of the State demands that this Court exercise its power and protect the judicial department from invasion by the legislative department. I would exercise that power now in the face of the threat subsection (f) presents to the independent functioning of the Judiciary.

The majority's opinion, by not merely permitting but positively condoning the Legislature's usurpation of judicial functions, will open the floodgates to future legislative "suggestions" directing the courts in the manner in which statutes "may" be interpreted. Rather than using its power to amend statutes or enact new law to address judicial rulings with which it disagrees, the Legislature is now empowered to preempt such problems by codifying the precise manner in which it wants its statutes interpreted by the courts, even to the point of directing the courts to the case citations for the appellate opinions it deems applicable. OCGA § 24-9-67.1 (f) turns on its head "the universal rule of our system — indeed of the English system of government, and of other systems which approximate to free government — [that] the courts declare what the law is, the legislature declares what the law shall be." *McCutcheon*, supra, 199 Ga. at 691 (2).

In addition to the not insignificant separation of powers violation presented by OCGA § 24-9-67.1 (f), there is the problem that its directive is unworkable and uninformed. The first sentence of OCGA § 24-9-67.1 (f) provides that "[i]t is the intent of the legislature that, in all civil cases, the courts of the State of Georgia not be viewed as open to expert evidence that would not be admissible in other states." I agree with the trial court that this sentence is unconstitutionally

vague and thus void.[7] The trial court phrased its ruling succinctly when it concluded that this language

> begs the question: *to which other states are our courts to look when deciding whether expert evidence is admissible?* According to one study, in 2004 there were 26 states classified as *Daubert* states and 15 classified as *Frye* [*v. United States*, 293 F 1013 (D.C. Cir. 1923)] states, with the remainder "rely[ing] only on their state equivalents of the original [Federal Rule of Evidence] 702. . . . Although there are 26 *Daubert* states, there are significant differences among them, primarily due to how narrowly they apply the reliability requirement. [Cit.]

(Emphasis in original.) Aside from amply demonstrating the Legislature's ignorance of the development of post-*Daubert* law, application of the Legislature's "intent" in subsection (f) leads to the absurd result that "other states" would govern the admissibility of expert opinion testimony in Georgia. Whether considered as a directive or a mere statement of intent, subsection (f) is so vague that people of common intelligence must necessarily guess as to its meanings and differ as to its application. It should accordingly be deemed void. See generally *Anderson v. Atlanta Committee for the Olympic Games, Inc.*, 273 Ga. 113, 114 (1) (a) (537 SE2d 345) (2000).

In conclusion, the decisions of this Court have made it unmistakably clear that while the Legislature alone can enact laws, the Judiciary alone can construe those laws. *Northside Manor*, supra, 219 Ga. at 301; *McCutcheon*, supra, 199 Ga. at 691 (2); *J.M.I.C. Life Ins. Co.*, supra, 280 Ga. App. at 374 (1) (b). It is the responsibility of this Court to protect judicial functions from usurpation by the Legislature. The Legislature cannot control the courts' interpretation of what evidence proves an expert's opinion is "reliable" any more than it can control the courts' interpretation of what evidence proves compensation is "just and adequate." *Calhoun*, supra, 223 Ga. at 67. I would therefore hold that because the Legislature's codified directive in subsection (f) to the courts regarding the construction to be given OCGA § 24-9-67.1 is an impermissible attempt to invade the exclusive jurisdiction of the judicial department, it offends the constitutional separation of powers and is therefore void. Accordingly, I

---

[7] Given this express holding by the trial court, I can only puzzle over the majority's statement that the trial court ruled only on the separation of powers violation and did not otherwise address the constitutionality of the first sentence of OCGA § 24-9-67.1 (f).

must respectfully dissent to the majority's holding.[8]

I am authorized to state that Justice Carley joins in Division 2 of this dissent.

DECIDED MARCH 10, 2008.

*Garland, Samuel & Loeb, David E. Tuszynski,* for appellants.

*Hall, Booth, Smith & Slover, Robert L. Shannon, Jr., Kevin D. Abernethy, Bondurant, Mixson & Elmore, Frank M. Lowrey IV,* for appellees.

*Doffermyre, Shields, Canfield & Knowles, Leslie J. Bryan, Charles M. Cork III, David A. Webster, Adrienne P. Hobbs, Alston & Bird, Laura L. Owens, Lucas Przymusinski, Powell Goldstein, Robert M. Travis, Lee Ann Jones, Freeman, Mathis & Gary, Theodore Freeman, Brinson, Askew, Berry, Seigler & Richardson, Robert M. Brinson, King & Spalding, J. Kevin Buster, W. Ray Persons,* amici curiae.

---

[8] Because I would hold that OCGA § 24-9-67.1 is unconstitutional as a violation of equal protection, I need not detail the evidentiary flaws that support my objections to the majority's affirmance of the exclusion of testimony by Ziem and Huggins.