**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 23, 2018**

# In the Court of Appeals of Georgia

A18A1196. ALLEN v. THE STATE.

MCFADDEN, Presiding Judge.

After a jury trial, Michael Anthony Allen was convicted of misdemeanor theft of services and misdemeanor fourth-degree forgery. Allen appeals the denial of his motion for new trial. He argues that the evidence does not support his convictions, but we find the evidence sufficient; that trial counsel was ineffective, but he has not shown both deficient performance and prejudice; that the trial court erred by allowing witnesses to give hearsay testimony, but the testimony fell within a hearsay exception; that the trial court erred by allowing the state to use a piece of demonstrative evidence, but the state properly authenticated the evidence; and that the trial court erred by refusing to continue the trial, but Allen did not ask for a continuance. So we affirm.

1. *Sufficiency of the evidence.*

Allen argues that the evidence was insufficient to prove the element of intent. When a defendant challenges the sufficiency of the evidence supporting his criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted; emphasis in original). It is the function of the jury, not the reviewing court, to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld." *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (citations and punctuation omitted).

So viewed, the record shows that Allen took a riding lawnmower to an Ace Hardware store to be repaired. Allen paid for the service with a check for $257. The bank did not honor the check.

The check was riddled with indicia of forgery. The name printed on the check was "Michal Allan," while the defendant's name is Michael Allen. The check listed

2

a Live Oak, Florida address, but the zip code for the address printed on the check was off by one digit. The address printed on the check for the bank, BB&T, was the address of a retail business, not a bank. The check numbers printed in the top corner and bottom corner of the check did not match. The printed routing and account numbers were centered on the check, which is rare for personal checks, and most importantly, the routing number was invalid.

Ace never received money for Allen's service, and Allen never came back to the store to try to pay.

> A person commits the offense of fourth-degree forgery

> when with the intent to defraud he or she knowingly . . . [m]akes, alters, possesses, utters, or delivers any check written in the amount of less than $1,500.00 in a fictitious name or in such manner that the check as made or altered purports to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority. . . .

OCGA § 16-9-1 (e) (1) (punctuation omitted). "[K]nowingly passing as genuine a forged instrument is conclusive of the intent to defraud." *Collins v. State*, 258 Ga. App. 400, 401-402 (1) (574 SE2d 423) (2002) (citations and punctuation omitted).

"A person commits the offense of theft of services when by deception and with the intent to avoid payment he knowingly obtains services . . . which [are] available only for compensation." OCGA § 16-8-5. "Deception, in turn, involves providing, either implicitly or explicitly, knowingly false information to another." *Jones v. State*, 285 Ga. App. 822, 825 (2) (648 SE2d 133) (2007) (citation omitted). "The essential ingredient of the offense is the intention to avoid payment. As is usual in cases of this type, there is no direct evidence that appellant obtained services by deception and with the intention of avoiding payment. The question then becomes whether the circumstantial evidence warranted the conviction." *Williamson v. State*, 191 Ga. App. 388, 389 (381 SE2d 766) (1989) (citations and punctuation omitted).

Given the apparent, obvious deficiencies with the check, the jury had before it sufficient evidence to "have found the essential elements of the crime[s] beyond a reasonable doubt." *Jackson*, 443 U. S. at 319 (III) (B). See *Taylor v. State*, 293 Ga. App. 551, 553 (1) (667 SE2d 405) (2008) (citation omitted) (even if jury accepted defendant's claim that she did not know checks were fraudulent, "the knowledge element of a violation of a criminal statute can be proved by demonstrating either actual knowledge or deliberate ignorance," and had defendant questioned the person who gave her the checks or examined the checks, she would have noted

4

discrepancies, such that a reasonable jury could have determined "at the very least, [defendant] remained deliberately ignorant of the fraudulent nature of the checks") (citations and punctuation omitted).

2. *Effective assistance of counsel.*

Allen argues that trial counsel was ineffective because he failed to present evidence that Allen had obtained the check from a legitimate, third-party source and had successfully used checks from this checkbook before. Specifically, Allen argues that counsel should have contacted the legal team or subpoenaed a representative from Deluxe Corp., the company from which Allen claimed to have purchased the checks, and should have subpoenaed Allen's bank records or a representative from Allen's bank to testify at trial. Allen has not proven that counsel's performance was professionally deficient.

> To prove such an ineffective assistance claim, an appellant must prove both that his counsel's performance was professionally deficient and that, but for the unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). We need not review both elements of this test if the appellant fails to prove one of them.

It is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics. And tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances. Moreover, a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Stripling v. State*, __ Ga. __ (3) (b) (__ SE2d __), 2018 Ga. LEXIS 454, at *13-14 (Case Nos. S18A0176, S18A0277 decided June 29, 2018) (citation and punctuation omitted).

Trial counsel testified at the motion for new trial hearing that Allen told him he had obtained the check from Deluxe Corp., which prints custom checks, and that he had written several checks from that checkbook that had cleared without a problem. Trial counsel testified that he asked Allen for documentation on Deluxe Corp., but Allen only provided a printed advertisement. Trial counsel testified that he searched the internet for information about Deluxe Corp. and tried to call the company, but he reached only an automated answering system.

6

Trial counsel asked Allen for copies of the checks from that checkbook that had cleared, but Allen never provided any. Further, according to counsel, Allen told him that he banked with Chase and he showed counsel Chase bank records. But the check written to the Ace Hardware was drawn on a BB&T account; Allen told counsel that he had never had a BB&T account. That was why counsel pursued the defense that he did — that the check given to Ace was the result of a printing mistake. In support of that defense, on cross-examination, trial counsel got an investigator to admit that customers can buy checks from third-party vendors, that they can customize their own checks, and that sometimes checks contain printing errors.

At the hearing on the motion for new trial, Allen did not introduce any documents from Deluxe Corp. showing that he had ordered the checks. Nor did he introduce his banking records or any cancelled checks drawn from the same checkbook. Allen did not introduce the testimony of any representative of Chase that similar checks had cleared his account. He introduced no evidence that he contends trial counsel should have found and introduced.

"Under these circumstances, considered without the distorting effects of hindsight, trial counsel's decision[s were] not patently unreasonable, and [Allen's] ineffective assistance claim therefore fails." *Stripling*, __ Ga. at __ (3) (b).

3. *Hearsay*.

Allen argues that the trial court erred by finding that certain testimony fell within the market-reports-and-commercial-publications exception to the hearsay rule. Under that exception, "[m]arket quotations, tabulations, lists, directories, or other published compilations generally used and relied upon by the public or by persons in the witness's particular occupation" are not excluded by the hearsay rule. OCGA § 24-8-803 (17).

Specifically, Allen objects to an investigator's testimony that he ran the routing number printed on the check through an American Bankers Association website to verify the routing number's validity. Allen argues that the hearsay exception does not apply because the investigator never testified that the website was relied upon by the banking industry or the police. See *United States v. Masferrer*, 514 F3d 1158, 1162 (II) (C) (i) (11th Cir. 2008) (data from Bloomberg Financial Service was admissible under Fed. Rule Evid. 803 (17) because government presented evidence establishing that such information is universally relied upon by individuals and institutions involved in financial markets). But another investigator, who also happened to formerly be a bank teller, did give such foundational evidence, testifying that law enforcement and those in the banking industry commonly use the American Bankers

8

Association website to verify routing numbers. The trial court did not err in allowing the testimony. See *U.S. Bank v. UBS Real Estate Securities.*, 205 FSupp3d 386, 441-442 (E) (7) (d) (S.D.N.Y. 2016) (testimony sufficient for court to conclude that online data verification and fraud prevention database was reliable so as to admit evidence from the database under Fed. Rule Evid. 803 (17)); *Elliott Assocs., L.P. v. Banco de la Nacion*, 194 F.R.D. 116, 121 (S.D.N.Y. 2000) (finding that plaintiff's expert report properly relied on prime rates of interest obtained from Federal Reserve Board website because they were reliable under Fed. Rule Evid. 803 (17)); *People v. Mooring*, 15 Cal. App. 5th 928, 941 (II) (A) (2017) (holding that officer's testimony identifying certain pills, based on consulting the "ident-a-drug" website, fell within the published compilation exception to the hearsay rule); *State v. Erickstad*, 620 NW2d 136, 145 (IV) (N. D. 2000) (holding that police officer's testimony about the value of a pickup truck, a figure he obtained from the Kelley Blue Book website, fell within the published compilation hearsay exception).

4. *Demonstrative evidence*.

Allen argues that the trial court erred by allowing the state to present demonstrative evidence: valid BB&T checks to compare with the apparent BB&T check Allen gave Ace Hardware. We find no reversible error.

9

Allen argues that the evidence was impermissibly presented to show differences instead of similarities. But he failed to make this objection at trial. So this argument is "reviewable only for plain error. See OCGA § 24-1-103 (d)." *Rickman v. State*, __ Ga. __ (2) (816 SE2d 4), 2018 Ga. LEXIS 436, at *5 (Case No. S18A0841, June 18, 2018) (citation and punctuation omitted). Allen cites no authority for the proposition that a witness cannot testify about differences between an item of demonstrative evidence and the item actually used in a crime, so long as the items are substantially similar. See id. See also *Faust v. State*, 302 Ga. 211, 217 (4) (a) (805 SE2d 826) (2017) (objection to state's use of demonstrative evidence would have been without merit because it was made clear to the jury that the weapons displayed as demonstrative evidence were not used in the crimes and "witnesses testified to the similarities and differences between the exhibits and the weapons actually involved") (citation omitted). Further, the similarities between the checks used as demonstrative evidence and the check Allen passed at the Ace Hardware store are clear: all are checks that purport to be connected to a bank account at BB&T. The investigator compared the demonstrative exhibits' routing number with the check passed by Allen, which also had a routing number; he compared the exhibits' use of the same check number at two places on the checks with Allen's check's use of

different check numbers at those two places on the check, which meant that both checks had printed check numbers in two places.

Allen also argues that the state failed to properly authenticate the BB&T checks used as demonstrative evidence because no BB&T representative testified at trial. See OCGA § 24-9-901 (a) ("The requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.") We find that the trial court did not err in concluding that the state met its burden of authentication.

> [T]he requirement of authenticity or identification, as opposed to admissibility, is met by evidence sufficient to support a finding that the matter in question is what its proponent claims. The decision of whether or not a particular piece of evidence has been appropriately identified falls within the discretionary function of the [trial] court, and that determination will not be disturbed on appeal absent a showing that there is no competent evidence in the record to support it. Authentication or identification under rule 901 merely involves the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be. Once that prima facie showing has been made, the evidence should be admitted, although it remains for the trier of fact to appraise whether the proffered evidence is in fact what it purports to be.

11

*United States v. Caldwell*, 776 F2d 989, 1001-1002 (IV) (B) (11th Cir. 1985) (citations and punctuation omitted). ([OCGA § 24-9-901]. The proponent's burden of authentication is light. *United States v. Butler*, 635 F. Appx. 585, 591 n.3 (III) (A) (11th Cir. 2015). "There need be only some competent evidence in the record to support authentication, which can consist of merely circumstantial evidence." *United States v. Hawkins*, 905 F2d 1489, 1493 (II) (A) (1) (11th Cir. 1990) (citation and punctuation omitted).

OCGA § 24-9-901(b) provides a non-exhaustive list of examples of methods that can be used to authenticate evidence. Among these is "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." OCGA § 24-9-901 (b) (4).

Allen has not shown that "no competent evidence," *Caldwell*, supra, supports the trial court's decision that the checks were properly authenticated. The investigator who testified about the checks testified that he had been a teller and customer service representative at a bank. He had handled as many as tens of thousands of checks. Since becoming a law enforcement officer, he had received between 150 and 175 hours of training in the specific areas of fraud, forgeries, wire transfers, and white collar crime. As for the demonstrative evidence, the investigator testified about the

standard, routine appearance of the checks, including the location of the routing number and the presence of the BB&T logo with a trademark symbol. Given the investigator's testimony and his training and experience, Allen has not shown that the trial court abused his discretion in determining that the checks had been sufficiently authenticated. See *United States v. Turner*, 718 F3d 226, 232 (II) (B) (1) (3d Cir. 2013).

5. *Continuance*.

Allen argues that the trial court erred by not continuing the trial when the state identified two witnesses just before trial. Allen objected to their testifying, given the late notice, and the trial court remedied the issue by giving counsel time to speak with the witnesses before they testified. Allen argues on appeal that instead, the trial court should have continued the trial.

> Upon learning of a discovery violation, the trial court, in its discretion, may order the state to permit an interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances. This provision does "not impose a rigid formulation or grant an exclusive remedy for a defendant or a fatal consequence to the [s]tate for failure to comply with the discovery mandates. Rather, it vests the trial court with discretion to fashion an appropriate remedy for the violation. We will

not reverse the trial court's decision [regarding the appropriate remedy] unless it abused that discretion.

*Arnold v. State*, 253 Ga. App. 307, 310 (2) (560 SE2d 33) (2002) (citations and punctuation omitted). Allen has not shown that the trial court erred. The court chose to permit Allen to interview the two witnesses, and Allen never asked for a continuance.

*Judgment affirmed. Rickman, J., concurs. Ray, J., concurs fully in Divisions 1, 2, 3 and 5, and in the judgment only as to Division 4.\**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY AS TO DIVISION 4. COURT OF APPEALS RULE 33.2.**