**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 25, 2021**

# In the Court of Appeals of Georgia

A20A1626. CHILDERS v. THE STATE.

GOBEIL, Judge.

Following a bench trial, Bailee Childers was convicted of a single misdemeanor count of furnishing a vapor product to a minor. Childers appeals, arguing: (1) the trial court erred in admitting the product label as an exception to the rule against hearsay; and (2) there was insufficient evidence to sustain her conviction. For the reasons that follow, we affirm.

"Upon a finding of guilt following a bench trial, the presumption of innocence no longer applies, and on appeal, the appellate court construes the evidence in favor of the judge's findings of fact." *Mason v. State*, 353 Ga. App. 404, 408 (3) (837 SE2d 711) (2020) (citation and punctuation omitted). So viewed, the evidence shows that during the summer of 2019, the Cherokee County Marshall's Office conducted a

county-wide "Vape Product Underage Sales Compliance Check" (the "Operation"). The general objectives of the Operation were to conduct compliance inspections at retail establishments located in Cherokee County, and arrest or obtain warrants for individuals selling any vapor product to minors. Each team in the Operation was assigned at least one underage operative.

As relevant here, on July 25, 2019, Sergeant Mary Turner of the Canton Police Department was assigned as the lead law enforcement officer of Team 5 of the Operation. Team 5 was tasked to conduct a compliance check at the OLE 5 Vapor store located at 4047 Marietta Highway, Suite 100A, Canton, Georgia (the "Store"). Two high school students, J. D. and A. Z., both aged 16 at the time, served as the underage operatives for Team 5. As part of the Operation, J. D. and A. Z. entered the Store and purchased a bottle containing a mango flavored nicotine salt. The store clerk, Childers, did not ask for proof of age from either of the two operatives. After completing the transaction, J. D. and A. Z. exited the store and provided the unopened product to Officer Luis Salas, who in turn photographed the evidence.

Sergeant Turner then entered the store and spoke to Childers, who was the only person inside the store at the time.[1] When questioned by Turner, Childers never denied that she sold the nicotine salt to J. D. and A. Z.; rather Childers maintained that she did not know that they were underage.

Thereafter, Childers was charged by accusation with one count of furnishing a vapor product to a minor, in violation of OCGA § 16-12-171 (a) (1) (A). On the day of trial, Childers filed a motion in limine, (1) seeking to prevent the State's witnesses from opining or otherwise referring "to the contents of a certain bottle of apparent liquid seized as a 'vapor product' or as containing nicotine"; and (2) arguing that the label on the bottle, which identified the contents as "nicotine salt," constituted inadmissible hearsay.

At trial, Childers objected to Sergeant Turner answering a question about the type of product that the minors had purchased from Childers as part of the Operation. Both sides then presented argument on Childers's motion in limine, but the trial court reserved its ruling until the close of evidence. The court later permitted the State to enter into evidence a photograph of the product that Childers sold to the two underage

---

[1] Both J. D. and A. Z. identified Childers as the store employee who had sold them the product.

operatives, including its label, subject to Childers's earlier hearsay objection. The label identified the product as a "RAM Top-Off 45 MG nicotine salt bottle," as well as an "e-cig liquid or fluid."[2]

At the close of evidence, the trial court orally denied Childers's motion, finding that the bottle's label — which clearly denoted the product as a nicotine product to be used in e-cigarettes and not sold to individuals under the age of 21 — was admissible under OCGA § 24-8-803.[3] Immediately thereafter, the court found Childers guilty as charged, and sentenced her to a term of 12 months to be served on probation. The instant appeal followed.

1. Childers asserts that the trial court erred in ruling that the product's label fell within an exception to the rule against hearsay. She contends that absent the admission of the product's label, the trial court would not have found her guilty of the charged offense.

---

[2] The copy of Exhibit 5 submitted with the record on appeal is dark and largely unreadable. Nevertheless, Childers concedes in her brief that the "label contained the terms '[n]icotine salt,' 'addictive,' 'nic salt e-liquid,' and a warning that this 'product contains nicotine, nicotine is an addictive chemical.'"

[3] The trial court's ruling does not specify the subsection of OCGA § 24-8-803 under which it found the label admissible as an exception to the rule against hearsay.

The parties do not dispute that the label on the product is hearsay offered to prove that the bottle contained a vapor product. Rather, the parties dispute whether the label was admissible under an exception to the rule against hearsay. As explained below, we conclude that even assuming the trial court erred, any such error was harmless.

(a) First, although the trial court did not specify under which subsection of OCGA § 24-8-803 it admitted the label as an exception to the rule against hearsay, we conclude that the court admitted the label under the "market-reports-and-commercial-publications" exception contained in OCGA § 24-8-803 (17) for the reasons that follow.

In its oral ruling on Childers's motion in limine, the court explained:

As to the hearsay objection. . . Judge Pope in [the *Ledford v. State*, 239 Ga. App. 237 (520 SE2d 225) (1999) (physical precedent only)[4]] case

---

[4] In *Ledford*, the defendant, who acknowledged "huffing" paint from a spray can, was charged under OCGA § 16-13-91 with inhaling "paint containing acetone and toluene." 239 Ga. App. at 237-238. That Code section prohibits, for the purpose of causing, inter alia, intoxication, "intentionally smell[ing] or inhal[ing] the fumes from any model glue[.]" OCGA § 16-13-91. In OCGA § 16-13-90, model glue is defined as any "glue, cement, solvent, or chemical substance containing one or more of the following chemicals: [numerous chemicals listed, including] toluene." The only proof at trial of the presence of toluene in the paint was the introduction of the spray paint can, the label of which listed the ingredients, including toluene. *Ledford*, 239

5

wrote the dissenting opinion which after the change in the evidence law to bring us more in line with the Federal rules, I believe is the current state of the law, and I believe because of that, the label, although hearsay, would be admissible under 803.

Childers contends that the trial court erred in finding the label admissible under the reasoning of Judge Pope's dissent in *Ledford*, as the rules of evidence have changed since that time. Specifically, she asserts that the trial court did not cite to a specific subsection of OCGA § 24-8-803 to find the label admissible as an exception to the rule against hearsay; rather, it erroneously relied on the "necessity exception," as discussed by the *Ledford* dissent (and later replaced by the "residual exception" now codified at OCGA § 24-8-807) to admit the label.

The State counters that, although the trial court did not cite to a specific subsection of OCGA § 24-8-803 in holding the label admissible, the court referenced OCGA § 24-8-803 as the basis upon which it was admitting the label, and further

---

Ga. App. at 238. This Court found that this hearsay, alone, was legally insufficient to prove the presence of toluene, which was an essential element of the crime charged. Id. In his dissent, Judge Pope agreed that the label on the can of paint was hearsay, but proceeded to analyze case law from other jurisdictions to argue that "[a] label including (rather than excluding) a hazardous substance is inherently trustworthy, in that a manufacturer would have no interest in proclaiming that the product contained such a substance if in fact it did not." Id. at 243-245 (Pope, P. J., dissenting) (citation and punctuation omitted).

directed Childers's counsel to review the specific provisions of subsection 17 in open court. Notably, as highlighted by the court in its oral ruling denying Childers's motion in limine, the cases Judge Pope cited to in his *Ledford* dissent all include provisions that mirror Rule 803 (17) of the Federal Rules of Evidence. At the time *Ledford* was issued in 2003, Georgia did not have the "market-reports-and-commercial-publications" hearsay exception now codified at OCGA § 24-8-803 (17) which mirrors the federal rule. Rather, prior to the enactment of the revised Evidence Code in 2013, Georgia courts typically relied on the "necessity" exception found at OCGA § 24-3-1 (b) to admit this type of evidence as an exception to the rule against hearsay. See *Yancey v. State*, 275 Ga. 550, 553 (2) (a) (570 SE2d 269) (2002) ("To be admissible under [the necessity] exception, the party presenting the evidence must prove that the declarant is unavailable to testify at trial, the declarant's out-of-court statement is relevant to a material fact and more probative on that fact than other available evidence, and the statement shows particular guarantees of the trustworthiness.").

Based on the foregoing, we conclude that the trial court in the instant case admitted the product label under the hearsay exception contained in OCGA § 24-8-803 (17).[5]

(b) Given our conclusion that the trial court admitted the label under the "market-reports-and-commercial-publications" exception contained in OCGA § 24-8-803 (17), we next consider whether the court erred in admitting the label under that subsection. Whether the label on the container of a vapor product comes within an

---

[5] To the extent that Childers asserts that the residual exception, now codified at OCGA § 24-8-807, did not apply to render the label admissible, the trial court did not admit the label under the residual exception, as evidenced by the fact that it never mentioned this exception in its ruling. See *Amica v. State*, 307 Ga. App. 276, 282 (2) (704 SE2d 831) (2010) (explaining that this Court is a court for correction of errors of law made by the trial court, which have as their bases specific rulings made by the trial court, and in the absence of such a ruling, the claim of error presents nothing for this Court to review). In any event, the State clarifies in its brief that it did not move to admit the label under the residual exception, which has specific notice requirements. See OCGA § 24-8-807 ("a statement may not be admitted under [the residual exception] unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it"). Moreover, as discussed above, the trial court admitted the label under OCGA § 24-8-803 (17). See *State v. Hamilton*, 308 Ga. 116, 124 (3) (b) n. 10 (839 SE2d 560) (2020) ("[B]ecause the residual exception applies *only* to statements not specifically covered by any law, trial courts should consider whether a specific exception to the hearsay rule applies before applying Rule 807. Indeed, Rule 807's residual hearsay exception is designed to be used very rarely, and only in exceptional circumstances.") (citations and punctuation omitted; emphasis in original).

8

exception to the general rule against hearsay is a matter of first impression in Georgia. Rule 803 (17)[6] provides that "[m]arket quotations, tabulations, lists, directories, or other published compilations generally used and relied upon by the public or by persons in the witness's particular occupation" are not excluded by the rule against hearsay.[7] Even assuming, without deciding, that the trial court erred in admitting the

[6] Since Georgia adopted the new Evidence Code in 2013, this Court has addressed the hearsay exception outlined in Rule 803 (17) only on two occasions. First, in *Allen v. State*, this Court upheld the trial court's ruling that testimony from an investigator that he ran the routing number printed on defendant's check through a banking website to verify the routing number's validity was admissible, as it fell within market-reports-and-commercial-publications exception to hearsay rule, in prosecution for misdemeanor theft and forgery crimes. 347 Ga. App. 731, 734-735 (3) (820 SE2d 747) (2018). Even though the investigator did not testify that the website was relied upon by banking industry or police, another investigator, who was a former bank teller, testified at trial that law enforcement and banking industry commonly used the banking website to verify routing numbers. Id. Second, in *Morrison v. Kicklighter*, we referenced Rule 803 (17) and explained that where identified and explained by expert testimony, industry standards relied upon by persons in the witness's particular occupation are admissible as an exception to the rule against hearsay. 329 Ga. App. 630, 632 (2) (a) (765 SE2d 774) (2014).

[7] Because OCGA § 24-8-803 mirrors Rule 803 of the Federal Rules of Evidence, we typically would look to case law from the Eleventh Circuit for guidance in interpreting that statute. See Ga. L. 2011, p. 99, § 1; *Barnum v. Coastal Health Svcs.*, 288 Ga. App. 209, 215 (2) (b) (653 SE2d 816) (2007). However, the Eleventh Circuit has yet to analyze the admissibility of a product label under any recognized exception to the rule against hearsay, including under Rule 803 (17), and under the residual exception codified at Fed. R. Evid. 807. In fact, our research revealed a surprising lack of any federal appellate opinions addressing the admissibility of a product label under a hearsay exception to prove its contents.

9

label of the product that Childers furnished to the two minors under the "market-reports-and-commercial-publications" exception to the rule against hearsay contained in OCGA § 24-8-803 (17), we conclude that any such error was harmless for the reasons outlined in Division 2.

2. Childers argues that the evidence was insufficient to support her conviction. The crux of Childers's argument is that the State failed to meet its burden to show that the product she sold to the two minors was a "vapor product." For the reasons that follow, we conclude the evidence was sufficient for the trial court to find Childers guilty of furnishing a vapor product to a minor.

Applying OCGA § 16-12-171 (a) (1) (A) to the sale of a vapor product to a minor appears to be one of first impression in Georgia.[8] Our analysis, therefore, necessarily begins with the language of the statute. See *Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015) ("[a] statute draws its meaning, of course, from its text"). As relevant here, OCGA § 16-12-171 (a) (1) (A) (2014) provides that "[i]t shall be unlawful for any person knowingly to [s]ell or barter, directly or indirectly, any cigarettes, tobacco products, tobacco related objects, alternative nicotine

---

[8] Despite the proliferation of vaping and related products in recent years, there is a surprising dearth of cases addressing such products, even from other jurisdictions.

products, or vapor products to a minor[.]"[9] OCGA § 16-12-170 (10) (2017), in turn, defines "vapor product" as

> any noncombustible product containing nicotine that employs a heating element, power source, electronic circuit, or other electronic, chemical, or mechanical means, regardless of shape or size, that can be used to produce vapor from nicotine in a solution or other form. The term "vapor product" shall include any electronic cigarette, electronic cigar, electronic cigarillo, electronic pipe, or similar product or device and any vapor cartridge or other container of nicotine in a solution or other form that is intended to be used with or in an electronic cigarette, electronic cigar, electronic cigarillo, electronic pipe, or similar product or device.[10]

---

[9] For purposes of this appeal, "minor" is defined as "any person who is under the age of 18 years." OCGA § 16-12-170 (5) (2017). Effective July 22, 2020, OCGA § 16-12-171 (a) (1) (A) now reads: "It shall be unlawful for any person knowingly to [s]ell or barter, directly or indirectly, any cigarettes, tobacco products, tobacco related objects, alternative nicotine products, or vapor products to any individual under the age of 21 years[.]" Because the instant offense took place on July 25, 2019, the prior version of the statute applies. In any event, the 16-year-old operatives in the instant case would be considered minors under either version of the statute.

[10] Even though the legislature recently amended the definition of "vapor product," the prior version of the statute applies in the instant appeal as the offense took place in July 2019. Effective July 22, 2020, OCGA § 16-12-170 (9) now reads:

> "Vapor product" means any noncombustible product containing nicotine that employs a heating element, power source, electronic circuit, or other electronic, chemical, or mechanical means, regardless of shape or size,

11

In determining the scope of conduct covered by OCGA § 16-12-171 (a) (1) (A) (2014), we presume that "the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). To that end, we "afford the statutory text its plain and ordinary meaning," and we read that text in the "most natural and reasonable way, as an ordinary speaker of the English language would." Id. at 172-173 (1) (a) (citation and punctuation omitted). See also OCGA § 1-3-1 (b) ("[i]n all interpretations of statutes, the ordinary signification shall be applied to all words"). This Court is required to read a particular statute as a whole, considering specific words and phrases not in isolation, but in relation to each other. *Warren v. State*, 294 Ga. 589, 590 (1) (755 SE2d 171) (2014). As our Supreme Court has explained:

that can be used to produce vapor or aerosol from nicotine or other substances in a solution or other form. Such term shall include, but shall not be limited to, any electronic cigarette, electronic cigar, electronic cigarillo, electronic pipe, or similar product or device and any vapor or aerosol cartridge or other container of nicotine or other substance in a solution or other form, including, but not limited to, a device component, part, or accessory of the device, that is intended to be used with or in an electronic cigarette, electronic cigar, electronic cigarillo, electronic pipe, or similar product or device.

12

[i]n our search for the meaning of a particular statutory provision, we look not only to the words of that provision, but we consider its legal context as well. After all, context is a primary determinant of meaning. For context, we may look to the other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question.

*Fed. Deposit Ins. Corp. v. Loudermilk*, 295 Ga. 579, 588 (2) (761 SE2d 332) (2014) (citation and punctuation omitted).

(a) On appeal, Childers asserts that based on the text of OCGA § 16-12-171 (a) (1) (A) (2014), the State had the burden to prove that the product Childers sold to the minors: (i) was noncombustible, (ii) contained nicotine, and (iii) employed a means to produce vapor from nicotine in a solution. The crux of Childers's argument is that the State failed to put forth any evidence other than the product label, such as chemical analysis or expert testimony, to establish that the product Childers furnished to the minors meets the statutory definition of a "vapor product." At the outset, we note that Childers fails to cite legal authority for her interpretation requiring expert testimony or chemical testing to prove that a product meets the statutory definition

13

of any of the products listed in OCGA § 16-12-171 (a) (1) (A).[11] As this is an issue of first impression in Georgia, we find it instructive to look for guidance in the analogous contexts of alcohol and narcotics.

OCGA § 40-6-253 (a) (1) defines an "alcoholic beverage" to include

[b]eer . . . and other similar fermented beverages, . . . [w]ine of not less than one-half of 1 percent of alcohol by volume; or [d]istilled spirits which is that substance known as ethyl alcohol, ethanol, or spirits of wine in any form, including all dilutions and mixtures thereof from whatever source or by whatever process produced.

OCGA § 40-6-253 (b) (1) in turn "provides that "[a] person shall not [c]onsume any alcoholic beverage or [p]ossess any open alcoholic beverage container in the passenger area of any motor vehicle which is on the roadway[.]" Our decisions regarding the sufficiency of the evidence in open container cases do not recognize a burden on the State to prove specific alcohol concentrate in liquid found in labeled alcohol bottles. See *Ayiteyfio v. State*, 308 Ga. App. 286, 289 (1) (b) (707 SE2d 186) (2011) (upholding open container conviction where officer testified that he found two

---

[11] In fact, the only Georgia case that cites to OCGA § 16-12-171 (a) (1) involves the admissibility of a police officer's testimony to establish that persons to whom defendant sold cigarettes were under the age of 18. *Griffin v. State*, 295 Ga. App. 472, 473 (1) (672 SE2d 453) (2009).

partially filled bottles of vodka and one partially filled bottle of tequila in the vehicle, and provided photographic evidence of same); *Yates v. State*, 263 Ga. App. 29, 30 (1) (587 SE2d 180) (2003) (officer's testimony describing "there was a [sic] open bottle of beer actually on the front seat" sufficient evidence to sustain defendant's conviction of driving with an open container of alcohol).

Similarly, in the context of narcotics, we have explained that "[e]xpert testimony is not necessary to identify a substance, including drugs." *Moore v. State*, 354 Ga. App. 145, 154 (3) (f) (840 SE2d 519) (2020) (ruling that trial court was within its discretion in permitting investigator, who participated in search of defendant's house, to give his opinion that the substance found in defendant's house was synthetic marijuana, in human trafficking prosecution involving victim, who testified that defendant gave victim synthetic marijuana to coerce her to perform sex acts for money) (citation and punctuation omitted). See also *United States v. Rouse*, 732 Fed. Appx. 853, 857 (III) (11th Cir. 2018) (unpublished) (reinforcing the Eleventh Circuit's "'expansive view' that controlled substances can be identified by various means of circumstantial evidence, such as lay experience based on familiarity through prior use, trading, or law enforcement; a high sales price; on-the-scene remarks by a conspirator identifying the substance as a drug; and behavior

characteristic of sales and use, such as testing, weighing, cutting and peculiar ingestion.") (citation and punctuation omitted).

Here, the State presented separate evidence aside from the product label to show that Childers furnished a vapor product to a minor. Specifically, Sergeant Turner testified about the objectives of the Operation — to conduct compliance inspections at retail establishments located in Cherokee County, and arrest or obtain warrants for individuals selling a vapor product to minors. As part of the Operation, the two underage operatives entered the Store on July 25, 2019, where Childers was working that day. One of the minors, J. D., testified that she purchased "mango e-juice" from Childers. The second operative, A. Z., stated that Childers told the minors that the Store, titled "OLE 5 Vapor store," sold "custom vape juices." A. Z. asked to have the nicotine salt product "mixed together," which Childers did. The minors then exited the store and provided the solution, packaged in a bottle, to the police.[12] Sergeant Turner also testified that the two operatives purchased "a mango flavored nicotine salt" as part of the Operation. Importantly, Childers herself admitted to

_____

[12] Although Childers raised a hearsay objection to the admission of the label, she did not object to the picture of the bottle itself.

16

selling "salt nicotine" to the two underage operatives, as captured on Turner's body cam, thereby establishing that the product contained nicotine.

Based on the foregoing, we conclude that the State presented the same information contained in the product label from sources separate and distinct from the label itself. And accordingly, taken as a whole, there was sufficient evidence from which the trial judge was authorized to infer Childers's guilt of furnishing a vapor product — containing nicotine for use with a noncombustible electronic cigarette[13] — to a minor in violation of OCGA § 16-12-171 (a) (1) (A) (2014). See *Corsini v. State*, 238 Ga. App. 383, 383 (1) (519 SE2d 39) (1999) ("A trial court's factual findings are not clearly erroneous if there is any evidence to support them. This is true even where such findings are based upon circumstantial evidence and the reasonable inferences which flow therefrom."); *Green v. State*, 323 Ga. App. 832, 833 (1) (a) (748 SE2d 479) (2013) ("[T]o sustain a judgment of conviction [based on circumstantial evidence], the evidence need not exclude every inference or hypothesis

---

[13] This is distinguishable from combustible nicotine that is used in regular cigarettes. United States Food & Drug Administration (https://www.fda.gov/tobacco-products/health-information/nicotine-addictive-chemical-tobacco-products) (last visited, Feb. 11, 2021).

except the guilt of the accused, but only reasonable inferences and hypotheses, so as to justify the inference, beyond a reasonable doubt, of guilt.").

(b) Childers also contends that to meet the definition of the term "vapor product," as employed in OCGA § 16-12-171 (a) (1) (2014), the State had to prove that she sold a product to a minor that includes both the compound or solution containing nicotine to be used in an electronic cigarette device *and* the electronic smoking device itself. We disagree.

First, Childers offers no legal authority in support of her position. Second, a plain common sense reading of the former version of OCGA § 16-12-170 (10) demonstrates that the term "vapor product" references any of the listed examples including, as relevant here, the compound used in an electronic smoking device, such as a "container of nicotine in a solution or other form," as well as the electronic smoking device itself. OCGA § 16-12-170 (10) (2017). Finally, Childers's interpretation clearly conflicts with the purpose of the statute: to prevent the sale of vapor products to minors.[14] By reading both parts of OCGA § 16-12-171 (a) (1) in the

---

[14] We glean the purpose of the statute from its express language, and not only is Article VII entitled "Sale or Distribution to, or Possession by, Minors of Cigarettes and Tobacco Related Objects," but its prohibitions set forth in OCGA § 16-12-171 (a) (1) explicitly focus on prohibiting access to such products by minors.

18

conjunctive, as Childers suggests, it would be permissible for example, for a person to sell an "electronic cigarette" to a minor so long as the minor also was not purchasing a "vapor cartridge of nicotine."

*Judgment affirmed. Barnes, P. J., and Pipkin, J., concur.*